Judge Pauley

08 CV 00200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BBC CHARTERING & LOGISTIC GmbH & Co. K.G.

Plaintiff,

-against-

USIMINAS MECANICA S/A, PERINI O&G, PERINI CORP., O&G INDUSTRIES INC., and UNIBANCO AIG SEGUROS S/A

Defendants.

08-CV- __________

**COMPLAINT FOR DECLARATORY JUDGMENT**

RECEIVED
JAN 10 2008
U.S.D.C. S.D. N.Y.

Plaintiff, BBC Chartering & Logistic GmbH & Co. K.G. ("BBC"), files its Complaint for Declaratory Judgment and respectfully represents:

**JURISDICTION AND VENUE**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court has jurisdiction over this action under 28 U.S.C. § 1332, 28 U.S.C. § 1331, as this action arises under the laws of the United States, in particular, the Carriage of Goods by Sea Act ("COGSA"), now codified at 46 U.S.C.A. § 30701 *et. seq.*, which BBC asserts is applicable to this contract for carriage both under the terms of the applicable bills of lading and by operation of law, as well as 28 U.S.C. § 1333, as this is a claim that arises under the Court's admiralty and maritime jurisdiction.

2. Venue is also proper in this Court pursuant to 28 U.S.C. §1391 (b), as several of the defendants to this claim may be found in New York within the jurisdiction of this Court. In addition, the events giving rise to this action concern New York. Under

terms of the letter of undertaking ("LOU") issued in relation to this claim, an appearance on behalf of the owners of the MALTE B was to be entered in any suit "timely" filed against the vessel and/or her owners in the United States District Court for the Southern District of New York.

3. BBC requests that this Court declare the rights, liabilities and other legal relationships under a contract for the carriage of goods by sea and to determine rights arising under said contract.

**THE PARTIES**

4. Plaintiff and Defendants, Usiminas Mecanica S/A ("Usimanas"), Perini O&G, Perini Corporation ("Perini"), O&G Industries Inc. ("O&G"), and Unibanco AIG Seguros S/A are persons/entities interested under the contract for carriage within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

5. BBC is a foreign corporation organized and existing under the laws of a state other than the State of New York, with its principal offices in Leer, Germany, and who was and is engaged in the business of operating vessels for the carriage of goods by sea.

6. Usiminas is a foreign corporation organized and existing under the laws of a state other than the State of New York, with its principal offices in Ipatinga, Minas Gerais, Brazil, and who was and is engaged in the business of manufacturing, selling, distributing and shipping steel and steel components.

7. Perini O&G is joint venture believed to be organized and existing under the laws of the state of New York, with its principal offices in Peekskill, New York, and who was and is engaged in the business of commercial construction.

8. Perini is a corporation believed to be organized and existing under the laws of the state of Massachusetts, with its principal place of business in Framingham, Massachusetts, and who was and is engaged in the business of commercial construction. Perini is also believed to be a co-venturer with O&G, in Perini O&G.

9. O&G is a corporation believed to be organized and existing under the laws of the state of Connecticut, with its principal place of business in Torrington, Connecticut, and who was and is engaged in the business of commercial construction. O&G is also believed to be a co-venturer with Perini, in Perini O&G.

10. Unibanco AIG Seguros S/A is a foreign corporation organized and existing under the laws of a state other than the State of New York, with its principal offices in Sao Paulo, Brazil, and who allegedly issued a policy of insurance to Usiminas for the carriage of goods which forms the basis for this claim.

**FACTUAL ALLEGATIONS**

11. At all material times, and particularly at the time of the alleged incident which forms the basis of this request for relief, BBC and Defendants had a contract for carriage memorialized by a bill of lading numbered BBCH1196067VN001, which is attached to this Complaint as "Exhibit A". On the reverse side of the bill of lading, the terms and conditions of carriage are incorporated.

12. The bill of lading pertains to the carriage of cargo described therein, and includes several packages consisting of bridge components that were ultimately to be used in a construction project for the Williamsburg Bridge. These packages were shipped aboard the M/V MALTE B, an ocean going vessel, from Vitoria, ES, and Brazil to New York, New York.

13. The bill of lading on its face identifies the following parties: (1) shipper, Usiminas; (2) consignee, Perini O&G; and (3) carrier, BBC. The bill specifically states on its face that 109 bundles are to be carried on deck at "shipper's/charterer's/receiver's risk as to perils inherent in such carriage, any warranty of seaworthiness of the vessel expressly waived by the shipper/charterer/receiver and all other respects subject to the provisions of the United States Carriage of Goods by Sea Act 1936."

14. On January 15, 2006, the MALTE B departed Vitoria bound for New York. On January 31, 2006, the weather began to significantly deteriorate and the vessel started rolling and pitching, with sea coming over the deck. At about 1720 hours, the winds from the southwest increased to Buford 11, with high seas (force 9) and 40 foot swells observed. At approximately 1827, the lashings securing the deck cargo snapped, and the deck cargo went over the starboard side in one motion. Certain other packages were also allegedly lost and/or damaged.

15. On March 2, 2006, Usiminas filed suit in the United States District Court for the Middle District of Florida – Tampa Division, and arrested the MALTE B pursuant to Rule C of the Federal Rules of Civil Procedure. In the suit, Usminas specifically referenced and filed as an exhibit the bill of lading issued in connection with this carriage of cargo. A copy of that Verified *In Rem* Complaint is attached as "Exhibit B".

16. In Paragraph 15 of that Complaint, Usiminas acknowledges that Clause 4 of the terms and conditions of the bill of lading requires all claims against the Carrier arising from the bill of lading or contract of carriage to be brought in Hamburg, Germany, with German law to apply, while reserving to the Carrier the right to file suit in any jurisdiction, which includes the instant one.

17. On March 9, 2006, in order to secure the release of the vessel, Skuld Assuranceforeningen, through Anchor Marine issued a letter of undertaking ("LOU") on behalf of the MALTE B and her owners to Usiminas and its underwriter, Unibanco AIG Seguros S/A. Under the terms of the LOU, an appearance on behalf of the owners of the MALTE B was to be entered in any suit "timely" filed against the vessel and/or her owners in the United States District Court for the Southern District of New York. Upon receipt of the LOU, counsel for shipper dismissed the suit in Florida.

18. No suit was ever re-filed suit in New York as stipulated in the LOU and because suit was not timely filed within one year of discharge as required by COGSA, the LOU, pursuant to its own terms, lapsed.

19. Despite the LOU, and despite the clear language of Clause 4 in the bill of lading requiring suit against BBC to be brought in Germany, Unibanco AIG Seguros S/A, assumedly with Usiminas' knowledge and consent has instead filed a lawsuit against BBC in Brazil, seeking recovery based upon this contract of carriage and seeking recovery well in excess of what the proper application of COGSA would allow.

20. Pursuant to COGSA, certain exceptions to liability apply to this carriage and BBC is, therefore, completely shielded from any liability.

21. Alternatively, consistent with the applicable bill of lading, the aforementioned cargo constitutes "packages" and/or customary freight units (C.F.U.'s) under established jurisprudence, thus invoking the limitation of liability provisions contained in COGSA, which provides that a carrier is entitled to limit its liability for loss or damage to cargo to $500.00 per package/C.F.U.

**FIRST CAUSE OF ACTION**

(COGSA Application, Defense and Indemnification)

22. The Plaintiff incorporates by reference all allegations set forth in paragraphs 1 to 21 above.

23. The Plaintiff seeks declaratory judgment that U.S. COGSA and its defenses and limitations apply to any potential claim that any party may have against BBC for damage to the above-described cargo; and furthermore, that Defendants owe BBC defense and indemnity for the lawsuit that Unibanco AIG Seguros S/A improperly filed in Brazil, and for any damages recovered therein which are in excess of what Defendants may be entitled to under COGSA.

**SECOND CAUSE OF ACTION**

(Plaintiff Entitled to Benefits Pursuant to the Shipowner's Limitation of Liability Act)

24. The Plaintiff incorporates by reference all allegations set forth in paragraphs 1 to 23 above.

25. In the further alternative, any alleged damage to the Defendants' cargo occurred without Plaintiff's privity or knowledge and Plaintiff is entitled to the benefits of the Shipowner's Limitation of Liability Act, 46 U.S.C. § 181, *et seq*.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, BBC Chartering & Logistic GmbH & Co. K.G. prays that Defendants Usiminas Mecanica S/A, Perini O&G, Perini Corporation, O&G Industries Inc., and Unibanco AIG Seguros S/A, be cited and served and that after all legal delays and proceedings, this Court declare that:

The exceptions provided for by COGSA are a complete liability shield preventing any recovery by Defendants from Plaintiff for the alleged damaged to the cargo;

In the alternative, the limitation of liability provisions in COGSA, apply to this contract of carriage, thus limiting any potential recovery of Defendants to $500.00 per package and/or C.F.U., for the alleged damages to the cargo;

In the further alternative, Plaintiff is entitled to the benefits of the Limitation of Liability Act, 46 U.S.C. § 181, *et seq.*, as the alleged damage to cargo, if any, occurred without Plaintiff's privity or knowledge;

That Defendants owe plaintiff defense and indemnity for the lawsuit improperly filed in Brazil by Unibanco AIG Seguros S/A; and for all other general and equitable relief that this Court deems fit, including costs and attorneys' fees.

Dated: January 10, 2008
New York, New York

Respectfully submitted,

CONDON & FORSYTH LLP

By ______________________

Lili F. Beneda (LB 1879)
7 Times Square, 18th Floor
New York, New York 10036
Telephone: (212) 894-6770
Facsimile: (212) 894-6721

*Counsel for BBC Chartering & Logistic GmbH & Co. K.G.*

# EXHIBIT A

# LINER BILL OF LADING

PAGE 2

| | |
|---|---|
| Shipper<br>USIMINAS MECÂNICA S/A<br>RUA HUM, 2000 – BAIRRO USIMINAS<br>CEP 35160-900 – IPATINGA- MG – BRAZIL | B/L No.<br>BBCH1196067VN001<br>Reference No.<br>LOGSEA 051/05<br>Shipping period |
| Consignee<br>PERINI/O&G A JOINT VENTURE<br>1022 LOWER SOUTH STREET<br>PEEKSKILL, NY 10566<br>ATT: ANDREW LEVINSON – (914) 739-1908 | Notify address<br>BERTLING LOGISTICS INC<br>15500 VICKERY DRIVE<br>HOUSTON, TX 77032 - TEL 1 281 774-2300<br>S.J. STILE ASSOCIATES LTD<br>105 MORRIS AVENUE, SPRINGFIELD- NJ<br>ZIP 07081 |

COPY
NOT-NEGOTIABLE

| | | |
|---|---|---|
| Port of loading<br>VITORIA | Port/place of trans-shipment | Vessel<br>MALTE B |
| Port of discharge<br>NEW YORK | Place of delivery by on-carrier | Carrier *<br>BBC CHARTERING & LOGISTIC GMBH |

| Marks and Numbers | Number and kind of packages; description of goods | Gross weight/Net weight | Measurement |
|---|---|---|---|
| | SAID TO BE | SAID TO WEIGH | SAID TO MEASURE |
| | BRIDGE COMPONENTS | | |
| | 531 VOLUMES COMPOSED OF: | 1.985.162, KGS | 3.951.940M³ |

74 BUNDLES WITH TRACKBEAMS; 19 BUNDLES WITH FITTINGS;
21 BUNDLES WITH SUPPORTS; 01 BENT PLANT;82 BUNDLES WITH BRACING; 110 BUNDLES WITH BARRIERS; 23 BUNDLES WITH BRACKETS; 54 BUNDLES WITH CONNECTORS; 68 BUNDLES WITH DECKS; 44 BUNDLES WITH STEEL PLATES; 11 BUNDLES WITH RAILING;01 BUNDLE WITH GUIDE;03 BUNDLES WITH HANDRAIL WEDGES; 20 CASES.

MASTER'S REMARKS:

1. ON 11TH OF JANUARY 2006 AT 16.30 LT WHILE LOADING SLINGS WERE TORN AND CARGO DROPPED AND SEVERAL OF ALUMINIUM CONSTRUCTIONS WERE BENT.
2. NUMBERS OF DAMAGED ITEMS: F307, F305, F510, F509, F508, F507, F506, F505, F503, F527
3. ON 12TH OF JANUARY 2006 AT 16.20 LT WHILE LOADING BUNDLE OF STEEL BAND SLINGS WERE TORN, BUNDLE FALLEN IN CARGO HOLD AND SEVERAL STEEL BANDS WERE BENT. NUMBERS NOT AVAILABLE.

SHIPPED ON BOARD

FREIGHT PREPAID
RE: 06/0035344-001 DDE: 2060066171/7 NCM: 7308.10.00

"BUNDLES NRS. F01, F02, F03, F05, F06, F07, F09, F10, F11, F12, F13, F14, F15, F16, F17, F18, F19, F20, F21, F22, F24, F25, F27, F28, F29, F30, F31, F32, F33, F34, F36, F37, F38, F39, F40, F41, F42, F43, F44, F47, F49, F50, F51, F52, F53, F54, F55, F56, F57, F58, F59, F60, F61, F62, F63, F64, F66, F67, F68, F69, F70, F71, F175, F176, F177, F202, F205, 206, F208, F211, F213, F217, F220, F226, F227, F230, F231, F242, F246, F249, F287, F289, F294, F389, F390, F391, F402, F432, F434, F435, F436, F437, F438, F440, F441, F442, F443, F444, F447, F448, F449, F451, F452, F453, F454, 3 BUNDLES TRACK BEAMS(NOT IDENTIFIED), 1 BUNDLE BARRIERS(NOT IDENTIFIED), CARRIED ON DECK AT SHIPPER'S/CHARTERER'S RECEIVER'S RISK AS TO PERILS INHERENT IN SUCH CARRIAGE, ANY WARRANTY OF SEAWORTHINESS OF THE VESSEL EXPRESLY WAIVED BY THE SHIPPER / CHARTERER/ RECEIVER, AND IN ALL OTHER RESPECTS SUBJECT TO THE PROVISIONS OF THE UNITED STATES CARRIAGE OF GOODS BY SEA ACT, 1936"

| | |
|---|---|
| Freight details, charges, etc. | Declaration of higher value of cargo |

Additional Terms
FORWARDING AGENT:
ALBAR CONSULTORIA LTDA
RUA MARECHAL FLORIANO, 19 SALA 1201
CENTRO - RIO DE JANEIRO - RJ - BRAZIL
TEL.: 55 21 2223 76 80

| Detention/Demurrage rate per day prorated | Freight Payable at<br>FREIGHT PREPAID | Place of issue<br>VITÓRIA, ES | Signature for and on behalf of the Carrier |
|---|---|---|---|
| | Number of original Bs/L<br>3 / THREE | Date of issue<br>15TH JANUARY, 2006 | TRANSREGIONAL SHIPPING AGENCY LTD<br>AS AGENTS FOR AND ON BEHALF OF CAPT.YURIY STORCHEVOY THE MASTER OF M/V "MALTE B". |

* Although this Bill of Lading may be issued by BBC Chartering and Logistic GmbH & Co. KG, unless BBC Chartering and Logistic GmbH & Co. KG is listed as Carrier, BBC Chartering and Logistic GmbH & Co. KG is acting only as Agent for the Carrier.

EXHIBIT
A

# LINER BILL OF LADING TERMS

**1. Applicability**
The terms of this Bill of Lading shall apply and supercede all other terms regarding this shipment *except* when BBC Chartering & Logistic GmbH & Co. KG is designated as the Carrier on the reverse side *and* the voyage involves either loading or discharging cargo in a United States' port in which case the terms on file with the United States Federal Maritime Commission for BBC Chartering & Logistic GmbH & Co. KG shall apply.

**2. Definitions**
Wherever the term "Merchant" is used in this Bill of Lading, it shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the Cargo. Wherever the term "Carrier" is used, this term shall be deemed to include the Operator, the Disponent Owner of the vessel, and the Owner of the vessel all in accordance with Clause 19.

**3. General Paramount Clause.**
(a). Hague Rules are Paramount.
Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there is no such enactments are compulsorily applicable, the terms of said Convention shall apply. Where the Hague Rules apply, they shall also apply to the period before loading and after discharge where the carrier may be deemed to have custody or control of such

b). Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharge and while the goods are in the charge of another carrier, and to deck cargo and live animals.

**4. Jurisdiction.**
All claims against the Carrier arising from or in connection with this Bill of Lading or the underlying contract of carriage shall be brought in the court of relevant jurisdiction in Hamburg, Germany with German law to apply. Nothing in the clause shall be construed to prevent the Carrier from filing suit in any jurisdiction for claims arising under or in connection with this Bill of Lading or the underlying contract of carriage.

**5. Period of Responsibility.**
Unless otherwise stated, the Carrier shall have custody of the goods from tackle to tackle ("hook/hook") only. The Carrier or Carrier's agent shall not be responsible for any loss of or damage to the goods during the period before loading and after discharge from the vessel, howsoever such loss or damage arises.

**6. The Scope of the Voyage.**
(a). The voyage shall not be limited to the direct route between the loading or discharge port, but may include at the carrier's option and sole discretion, calling at any other port or place, whether en route or within rotation or not, or whether advertised or not. The Carrier shall be at liberty to determine the vessel's schedule and rotation and, as the vessel may be in a non-liner service, the schedule and rotation may include ports for loading, discharging, bunkering or maintenance which are not directly en route of the loading and discharge port as specified in this bill of lading. The Carrier has the liberty to change the vessel's port rotation, to add additional ports of loading, discharge or bunkering and otherwise to alter the voyage as initially planned at any time including while the vessel is en route. These changes may substantially change the course of the voyage and the route the vessel may take, and may lengthen or shorten the actual time of the voyage. Unless stated on the reverse side, the Merchants have no right to a direct voyage and in any event there will be no cause of action for the delay of the cargo. Any voyage estimates are accordingly given without prejudice and without recourse.
(b). Unless the cargo is described as a full and complete cargo on the reverse side of this Bill of Lading, the Carrier shall have the liberty of restowing the cargo and loading and discharging other part cargoes for the account of others than the Merchants from places en route or not en route to places en route or not en route.

**7. Substitution of the Vessel, Transshipment and Forwarding.**
Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to transship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense but at Merchant's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods is other than the vessel's port of discharge, the Carrier acts as Forwarding Agent only. The Carrier shall always have the right to transship the cargo at any intermediate or other port via barge, quay or other vessel and can use vessel's gear, floating or shore cranes as required. The responsibility of the Carrier shall be limited to the part of the transport performed by the Carrier on vessels under the Carrier's management.

**8. Lighterage.**
At any ports or places of discharge where the Carrier is required by law or custom to deliver the cargo to port authorities or to discharge the cargo to or load the cargo from, lighters or other craft, delivery or receipt by the Carrier shall take place at the end of the vessel's tackle or when the Carrier no longer has control of the goods, and the lighterage or custody thereafter, as the case may be, shall be at the risk and expense of the merchant. **9. Loading, Discharge and Delivery.**
(a). All loading, discharge and delivery shall be arranged by Carrier's agents unless otherwise agreed. All delivery takes place at the end of vessel's hook unless otherwise specified. Landing, storing and delivery shall be for merchant's account. Loading and discharging may commence without previous notice. The Merchants shall be responsible for providing all spreader bars, lifting frames, slings or saddles. The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative or surveyor to be for Merchant's account.
(b). At the loadport, if the vessel arrives and the goods are not available for loading, the vessel may wait on detention for 48 hours and if the goods are still not available, the vessel may leave the port without any further notice and the merchant shall owe full deadfreight.
(c). At the loadport, the Merchant or his Agent shall tender the goods when the vessel is ready to load and as fast as the vessel can receive and, if required by the carrier, outside the ordinary working hours notwithstanding any custom of the port. If the Merchant does not comply with tendering the cargo when the vessel is ready to receive, then the Carrier shall be relieved of any further obligation and may leave the port without further notice and the Merchant shall be responsible for all deadfreight or breach of contract damages which shall be calculated at the freight rate.
(d). At the discharge port, the Merchant shall take delivery of the goods as fast as the vessel can deliver and, if required by the Carrier, also outside the normal working hours of the port. Otherwise, the Carrier shall be at liberty to discharge the goods and any discharge shall be considered a true fulfillment of the contract. If inadequate arrangements have been made to receive the goods and the vessel cannot berth or commence or complete discharge due to the lack of arrangements, then the Carrier may wait up to 48 hours on detention, then, at the Carrier's election, the Carrier may leave the port and discharge the goods at any available and convenient port, with the contract then being considered fulfilled and no further obligations owed to the Merchant. All such extra expenses, including oncarriage to the final pod of destination (as mentioned in the bill of lading) shall be borne by the Merchant.
(e). The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.
(f). If the goods are not applied for within a reasonable time, the Carrier may sell same privately or by auction.
(g). The Merchant shall accept a reasonable proportion of unidentified loose cargo.
(h). If the cargo is to be carried pursuant to the terms free in/liner out as designated on the reverse side of this Bill of Lading, then the Merchant shall be responsible for the stevedoring expenses of loading the cargo as well as liable for the negligence of the stevedores at the loadport, notwithstanding that the Master is responsible for the seaworthiness of the vessel. Allowed laytime for loading as designated on the front of this Bill of Lading shall commence to count immediately upon receipt of vessel's Notice of Readiness which may be tendered at the Port of Loading any time day or night, Saturdays, Sundays, Holidays included whether in berth or not, whether in port of not, whether custom cleared or not.
(i) If the cargo is to be carried pursuant to the terms liner in/free out as designated on the reverse side of this Bill of Lading, then the Merchant shall be responsible for the stevedoring expenses of discharging the cargo as well as liable for the negligence of the stevedores at the discharge port, notwithstanding that the Master is responsible for the seaworthiness of the vessel. Allowed laytime for discharging as designated on the front of this Bill of Lading shall commence to count immediately upon receipt of vessel's Notice of Readiness which may be tendered at the Port of Discharging any time day or night, Saturdays, Sundays, Holidays included whether in berth or not, whether in port of not, whether custom cleared or not.

**10. Live Animals and Deck Cargo.**
Unless underdeck stowage is specifically contracted, the Carrier may stow the goods on or underdeck at the Carrier's option. The Carrier shall have no liability whatsoever with respect to live animals and deck cargo. However, if any court or tribunal finds that the Carrier shall have liability, then such liability shall be subject to limitation in accordance with the Hague or Hague-Visby Rules referred to in Paragraph 3 above and the goods schall be considered to have been carried always subject to these Rules. The Carrier shall not be liable for any loss or damage resulting from any act, neglect or default of the Carrier's servants in the management of such animals or deck cargo, notwithstanding anything contained in Clause 20.

**11. Options.**
All port(s) of dischage for all optional cargo must be declared to the Carrier 48 hours before arrival at the first optional port. In the absence of such declaration, the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall be considered as having been fulfilled. Any option can be exercised for the total quantity under this Bill of Lading only.

**12. Freight and Charges.**
(a). All freight shall be considered to be pre-payable freight and, whether actually paid or not, shall be considered as fully earned pro rata upon loading and is discountless and non-returnable in any event ship and/or cargo lost or not lost. The Carrier's claim for any other charges under this contract including but not limited to detention, demurrage, deadfreight and attorneys' fees shall be considered to be payable in like manner as soon as the charges have been incurred.
(b). Any detention or demurrage incurred shall be paid day by day if demanded by the Carrier. The detention and demurrage rate shall be US $10,000 per day pro rata unless such rate is provided on the reverse side of this Bill of Lading in which case, such rate shall control.
(c). Interest for all charges shall accrue at 12% per annum compounded daily from the date such charges were due.
(d). The Merchant shall be liable for expenses of fumigation and gathering and sorting loose cargo and weighing onboard and expenses incurred in repairing damage to and replacing of packing due to excepted clauses and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons. The Merchants shall also be responsible for all truck loading/unloading. Terminal Handling Charges, hooking on/unhooking, wharfage, and dock dues, etc. The Merchant shall also be responsible for the German QWTC dues, Swedish Fairway dues. Receiving, Storing & Delivery dues and all other applicable dues or similar charges.
(e). Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant. All blocking and trapping dues and charges to be paid by the Merchant
(f). The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through violation of Customs House and/or import or export regulations and the Merchant shall indemnify the Carrier for any and all expenses including legal fees associated with same.
(g). The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight (200%) which would have been due if such declaration had been correctly given. For the purposes of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents/cargo inspected and the weight, measurement or value verified. Further, for the purposes of calculating cargo cubic, all cargo shall be measured at the extreme ends. Carrier's surveyor may measure and/or weigh the cargo to determine measure and weight. Carrier's measure and weight (which can be taken from the terminal's receiving report) to be used for the purposes of calculating freight charges.
(h). For any cancellation of contract, the Merchant shall owe 75% of the freight charged as liquidated damages less any stevedore or port expenses attributable to the cargo unless the vessel has commenced on the voyage toward the loadport in which case 100% of the freight shall be due and owing, less any stevedore or port expenses attributable to the cargo.
(i) All bookings and contracts made 'subject details' shall be considered to be valid and binding, and all terms herein shall apply.

**13. Time Lost Due to Swell or Tide.**
Any time lost during loading, transshipment or discharge, including all times waiting for berth, due to swell or tide shall count as detention for the Merchant's account.

**14. Lien.**
The Carrier shall have a lien on the cargo for any amount due under this contract including but not limited to freight, deadfreight, breach of contract damages, detention, demurrage, any vessel damage caused by or due to negligence or default of the Merchants, and any deviation costs necessitated by the negligence or default of the Merchants. The Carrier shall also have a lien on the cargo for the costs of recovering the amounts due under this contract and for the aforementioned vessel damage including all arbitrator, court, and attorneys' fees. The Carrier shall be entitled to sell the goods privately or at auction to cover any claims for amounts due, vessel damage or costs. The lien may be exercised by the Carrier either at the discharge port, or on board the vessel at the Carrier's option. If it is not possible, feasible or desirable to exercise the lien at the discharge port, the Carrier may take the goods to the most convenient port where such lien may be exercised and the Merchants shall be responsible for all associated costs including any return freight. In any event, the Carrier's lien shall survive delivery of the goods. If the Merchants issue further negotiable bills of lading or documents of title concerning the cargo, all such documents must give notice of the Carrier's lien.

**15. Delay**
The Carrier shall not be responsible or liable for any loss sustained by the Merchant for delay of the goods howsoever caused.

**16. General Average and Salvage.**
General Average to be adjusted at any port or place at Carrier's option and to be settled in accordance with the 1974 York-Antwerp Rules. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

**17. Both-to-Blame Collision Clause.** (This Clause to remain in effect even if unenforceable in the Courts of the United States of America).
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of said goods paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, or recouped or recovered by the other or non-carrying vessel or vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

**18. Government Directions, War, Epidemics, Ice, Strikes, etc.**
(a). The Master and the Carrier shall have the liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance of the vessel the right to give such orders or directions or recommendations.
(b). Should it appear to the Master or Carrier that the performance of the transport would (1) expose the vessel or any goods onboard to risk of seizure or damage or delay, resulting from war, warlike conditions, hostilities or the threat of hostilities, terrorist activities or the threat of terrorist activities, blockades, riots, civil commotion or piracy, or (2) expose any person on board to such risk of injury, bodily harm, capture, kidnapping due to any of the aforementioned activities, then the Master may discharge the cargo at the port of loading or any other safe and convenient port without any further obligations owed to the Merchant, full freight having been earned.
(c). Should it appear that epidemics, quarantine, ice, labor troubles, labor obstructions, strikes, lockouts, any of which occurring either onboard or on shore, would (1) create difficulties in loading or discharging, or (2) prevent the vessel from reaching or leaving the port of loading or reaching or entering the port of discharge, or (3) discharging at the port of discharge in the usual manner and leaving again, all of which safely and without delay, the Master may discharge the cargo at the port of loading or any other convenient port, full freight having been earned.
(d). The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfillment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight to the discharge port if any, and a reasonable compensation for any service rendered to the goods. (e). If any situation referred to in this clause may be anticipated, or if any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of lading is issued without any recourse.
(f). Any additional premium determined to be applicable by underwriters for breaching or exceeding trading limitations imposed by the London War Risk Trading Warranties to be for Merchant's account.

**19. Identity of Carrier.**
(a). The Contract evidenced by this Bill of Lading is between the Merchant and the Carrier and/or Owner of the vessel named herein (or substitute vessel) and it is therefore agreed that said Owner or Carrier only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of this contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other party is the Carrier or Bailee of the goods shipped hereunder, all limitations of and exonerations from liability provided by law or by this Bill of Lading shall be available to such other party.
(b). It is further understood and agreed that any Line, Company or Agents who have executed this Bill of Lading for and on behalf of the Master are not a principal in the transaction and said Line, Company or Agents shall not be under any liability whatsoever arising out of this contract of carriage. Said Line, Company or Agents also shall not be liable as a Carrier nor as Bailee of the goods. If Merchant or their underwriters bring a claim against said Line, Company or Agents asserting that they are liable as a principal, all such costs required to defend same shall be recoverable from the Merchants.

**20. Exemptions and Immunities of all Servants and Agents of the Carrier and Managers of the Vessel.**
(a). It is hereby expressly agreed that no servant or agent or manager (including general, commercial, technical or crewing managers) of the Carrier or vessel (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchants for any loss, damage, or delay, arising from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions of this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability and limitation of liability applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant, agent or manager of the Carrier acting as aforesaid and for this purpose all of the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants, agents or managers from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.
(b). The Carrier shall be entitled to be paid by the Merchant on demand any sum recovered or recoverable by the Merchant or any other party from such servant, manager, or agent of the Carrier for any loss, damage or delay or otherwise.

**21. Packaging, Optional Stowage and Unitization**
(a). The Merchants shall ensure that all cargo is packed for ocean transportation with all centers of gravity marked, proper skids attached and, if required all cradles sturdy and the goods secured within the cradles and all spreader bars necessary available to the Carrier. Cargo to be fitted with suitable lifting lugs and sufficient lashing points for securing to be placed. If items are not flat at the bottom, a footprint sketch is *required*. Any special dunnaging to be for Merchant's account.
(b). Goods may be stowed by the Carrier as received, or, at Carrier's option, by means of containers, or similar articles of transport used to consolidate goods.
(c). Containers, trailers and transportable tanks whether stowed by the Carrier or received by the Carrier in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant and without further clausing of the bill of lading.
(d). The Carrier shall not have any liability for cargo stowed on deck, but in the event that the Carrier shall be found to be liable, then such liability shall be governed by Paragraph 10.
(e). All goods, whether carried on deck or not, shall contribute to general average and shall receive compensation in general average. **22. Survival of Terms and Exclusivity of Remedies.**
The terms of this Bill of Lading shall be separable, and if any provision herein, or any part of any Paragraph shall be held to be invalid or unenforceable, such holding shall not affect the validity or enforceability of any other provision or part of this Bill of Lading.
It is expressly agreed that all causes of actions for damage to cargo shall be limited to contractual claims pursuant to the terms herein and the applicable conventions and legislation. All claims based in tort or delict against the carrier and the carrier's servants, agents or managers are hereby waived. **23. U.S. Trade, Period of Responsibility.**
(a). In the case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's Custody.
(b). The number of packages designated on the reverse side of this Bill of Lading shall be considered to be the number of packages for limitation purposes. Each container shall be considered to be a package. (c). US regulations stipulate that all cargo being discharged or transiting through US waters must be identified and description filed by the carrier with the US Customs service 24 hours before such cargo is loaded. If Merchants do not send information timely for Carrier to comply with US regulations, all fines, penalties shall be for Merchant's account.

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN ADMIRALTY

USIMINAS MECANICA S.A.

Plaintiff, CASE NO.:

v.

M/V MALTE B (VIN #9194854), her engines, boilers, tackle, furniture, apparel, appurtenances, etc., *in rem*,

Defendants.
________________________________________/

**VERIFIED *IN REM* COMPLAINT**

Plaintiff Usiminas Mecanica S.A., by and through its undersigned counsel, sues the defendant M/V MALTE B (VIN # 9194854), her engines, boilers, tackle, furniture, apparel, and appurtenances, etc., *in rem* ("MALTE B"), and states the following:

1. Subject matter jurisdiction is vested in the United States District Court for the Middle District of Florida, Tampa Division (this "District Court") pursuant to 28 U.S.C. Section 1333 and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. This is an admiralty and maritime claim within the meaning of Federal Rule of Civil Procedure 9(h).

3. Personal jurisdiction over the MALTE B is proper in this District Court.

4. Venue is proper in this District Court.

5. Plaintiff Usiminas Mecanica S.A. is a corporation organized and existing under the laws of Brazil.

EXHIBIT B

6. Defendant vessel MALTE B is an Antigua and Barbuda flagged freight ship that is 283.5 feet in length, 42.7 feet in breadth, and is of 2,528 gross tons.

7. Defendant vessel MALTE B is now located within the jurisdiction of this District Court.

8. More specifically, the defendant vessel MALTE B is located at the Port of Tampa, Berth #265, International Ship Repair & Marine Services, Inc. 1616 Penny Street, Tampa, FL 33605.

9. On or about 15 January 2006 at Vitoria, ES, Brazil, plaintiff Usiminas Mecanica S.A. delivered to the MALTE B certain cargo described in Bill of Lading no. BBCH1196067VN001 ("Cargo") in good order and condition for shipment to New York pursuant to that bill of lading in consideration of certain agreed freight and other charges. (See the front side of Bill of Lading no. BBCH1196067VN001 attached hereto as Exhibit "A.")

10. The Cargo was received on board the MALTE B in good order and condition.

11. On or about 7 February 2006, the MALTE B arrived at the marine terminal in New York, failing to deliver the Cargo in like good order and condition as was the Cargo when received on board the MALTE B at Vitoria, ES, Brazil.

12. To the contrary, the shipment of Cargo was lost overboard and damaged during transit from Vitoria, ES, Brazil to New York, U.S.A.

13. Usiminas Mecanica S.A. claims a preferred maritime lien against the MALTE B as a result of the aforesaid incident, and Usiminas Mecanica S.A. sues herein to enforce its preferred maritime lien against the MALTE B.

14. The MALTE B, *in rem*, is liable to Usiminas Mecanica S.A. for all damages sustained by Usiminas Mecanica S.A., which exceed $1,000,000.00.

15. Usiminas Mecanica S.A. is aware that clause 4 of the terms and conditions attached to Bill of Lading no. BBCH1196067VN001 names Germany as the proper jurisdiction to litigate claims against the Cargo "Carrier" ("Clause 4"). (See the reverse side of Bill of Lading no. BBCH1196067VN001 attached hereto as Exhibit "B.")

16. Although Usiminas Mecanica S.A. recognizes the language of Clause 4, it notes that Clause 4 may not be applicable to this claim because clause 1 of the terms and conditions attached to Bill of Lading no. BBCH1196067VN001 calls for the application of certain other terms on file with the United States Federal Maritime Commission ("Other Terms").

17. The conditions precedent to the application of the Other Terms appear to be satisfied in this case.

18. To date, Usiminas Mecanica S.A. has been unable to obtain the Other Terms.

19. Regardless of paragraphs 15-18, and recognizing the fact that any claims against the Cargo "Carrier" may be subject to a forum-selection clause naming a forum other than the Middle District of Florida as the proper forum to litigate disputes against the Cargo "Carrier," Usiminas Mecanica S.A. intends for the arrest of the MALTE B to provide security for its claim against the Cargo "Carrier."

WHEREFORE, Usiminas Mecanica S.A. prays that:

a) This Verified *In Rem* Complaint be deemed good and sufficient;

b) Process according to the rules and practices of this District Court in causes of admiralty and maritime jurisdiction issue against the M/V MALTE B, her tackle, equipment, boats, engines, apparel, boilers, appurtenances, and all other property on board said vessel, etc. *in rem*;

c) That the preferred maritime lien of Usiminas Mecanica S.A. be declared valid and existing superior in right and interest to any claim upon the vessel by any other person, firm, or corporation;

d) After due proceedings are had, there be a judgment rendered in favor of Usiminas Mecanica S.A. and against the M/V MALTE B, *in rem*, that the vessel be condemned and sold to satisfy any judgment entered in favor of Usiminas Mecanica S.A. in the full amount of its claim, together with pre-judgment interest, attorneys' fees, the costs of such proceedings, and for such further relief as this District Court deems proper.

Dated: 2nd March 2006

DAVID W. McCREADIE
FL Bar No.: 308269
MICHAEL H. KESTENBAUM
FL Bar No.: 0767301
LAU, LANE, PIEPER, CONLEY
& McCREADIE, P.A.
100 S. Ashley Drive, Suite 1700
Tampa, FL 33602
Telephone No.: (813) 229-2121
Facsimile No.: (813) 228-7710
dmccreadie@laulane.com
Attorneys for Usiminas Mecanica S.A.

**VERIFICATION**

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

MICHAEL H. KESTENBAUM, being duly sworn, deposes and says:

1. I am an attorney in the firm of Lau, Lane, Pieper, Conley & McCreadie, P.A., attorneys for the plaintiffs in this action. I have read the foregoing Verified *In Rem* Complaint and know the contents thereof and the same are true to the best of my knowledge, except as to matters therein stated to be on information and belief, and as to these matters, I believe them to be true.

2. The sources of my information and the grounds for my belief are communications and documents received from the plaintiff's New York City, New York attorneys, including a commercial invoice and a bill of lading. The reason this verification is made by an attorney and not by the plaintiff is because the plaintiff is a foreign entity, none of whose officers are presently within this district.

MICHAEL H. KESTENBAUM, as attorney-in fact
for Usiminas Mecanica S.A.

BEFORE ME, the undersigned authority, personally appeared, Michael H. Kestenbaum, as attorney-in-fact for Usiminas Mecanica S.A., who, after being duly sworn, states that all of the allegations contained in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.

SWORN TO AND SUBSCRIBED before me this 2nd day of March 2006.

My Commission expires:

✓ Personally known to me, or

_____ Produced identification

________________________
(Type of ID)

NOTARY PUBLIC
State of Florida

Diana Arochena
Commission # DD48278[illegible]
Expires November 30, 200[illegible]
Bonded Troy Fain - Insurance, Inc 800-385-7019

Printed, Typed or Stamped Name of Notary Public

# EXHIBIT "A"

# EXHIBIT "B"

# LINER BILL OF LADING TERMS

1. Applicability
The terms of this Bill of Lading shall apply and supersede all other terms regarding this shipment except when BBC Chartering & Logistic GmbH & Co. KG is designated as the Carrier on the reverse side and the voyage involves either loading or discharging cargo in a United States' port in which case the terms on file with the United States Federal Maritime Commission for BBC Chartering & Logistic GmbH & Co. KG shall apply.

2. Definitions
Whenever the term "Merchant" is used in this Bill of Lading, it shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the Cargo. Whenever the term "Carrier" is used, this term shall be deemed to include the Operator, the Disponent Owner of the vessel, and the Owner of the vessel all in accordance with Clause 18.

3. General Paramount Clause.
(a). Hague Rules are Paramount.
Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there is no such enactments are compulsorily applicable, the terms of said Convention shall apply. Where the Hague Rules apply, they shall also apply to the period before loading and after discharge where the carrier may be deemed to have custody or control of such goods.
(b). Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1968 ("the Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations [illegible]

[illegible]