HILL RIVKINS & HAYDEN LLP
*Attorneys for Defendants Usiminas Mecanica S/A*
*and Unibanco AIG Seguros S/A*
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212)-669-0600
Fax: (212)-669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

BBC CHARTERING & LOGISTICS GMBH &          :
CO. K.G.,

                                         :

        Plaintiffs,                  :

                                         :

   vs.                                 :    Index No.: 08-cv-200 (WHP)

                                         :

USIMINAS MECANICA S/A, PERINI O&G,          :    **DECLARATION OF**
PERINI CORP., O&G INDUSTRIES, INC., and     :    **KEITH B. DALEN**
UNIBANCO AIG SEGUROS S/A,

                                         :

        Defendants.                  :

                                         :

                                         :

-------------------------------------------------------------x

     KEITH B. DALEN, under penalty of perjury declares as follows:

     1.    I am an attorney and member of the law firm of Hill Rivkins & Hayden

LLP, attorneys for defendants, Unibanco AIG Seguros S/A and Usiminas Mecanica S/A.

I make this declaration in support of defendants' motion to dismiss the complaint for lack

of personal jurisdiction, *lis alibi pendens, res judicata* and *forum non conveniens*.

     2.    Attached hereto as Exhibit A is a copy of a Letter of Undertaking ("LOU")

obtained from Assuranceforeningen Skuld P & I Club (W. Bockstiegel GmbH &

Reederi) in favor of Usiminas Mecanica S/A.  The LOU was obtained from the vessel

owner's P & I Club to cover damages sustained by a cargo of bridge components.  Some

time after receipt of the LOU, on March 30, 2007, the LOU was voluntarily returned to the vessel owner's P & I Club.

3.      Attached hereto as Exhibit B is a copy of a commercial invoice from Usiminas Mecanica S/A to Perini O & G covering the cargo of bridge components that is the subject of the present suit.

4.      Attached hereto as Exhibit C is a copy of a Liner Booking Note between the plaintiff, BBC Chartering & Logistics GmbH and Usiminas Mecanica S/A for the booking of the M/V MALTE B for the voyage that is the subject of the present suit.

5.      Attached hereto as Exhibit D is a copy of the front and back of a bill of lading covering a cargo of bridge components transported aboard the M/V MALTE B from Vitoria to New York.

6.      Attached hereto as Exhibit E is a copy of the tariff FMC-001 required to be made available to the public by the Federal Maritime Commission and filed by BBC Chartering & Logistics GmbH & Co. KG.


I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746 that the foregoing is true and correct.


Executed on May 30, 2008


Signed: _____
                   Keith B. Dalen

2

# EXHIBIT A

# ANCHOR ⚓ MARINE CLAIMS SERVICES INC.

March 9, 2006

Usiminas Mecanica S.A.
And Unibanco AIG Brazil
c/o Hill Rivkins & Hayden
45 Broadway, Suite 1500
New York, NY 10006-3739

> Re:   M/V MALTE B
>        Deck cargo of bridge components lost overboard
>        Bs/L BBCH1196067VN001 Vitoria/New York, dated January 15, 2006
>        Amount: USD 1.3 million

Dear Sirs:

In consideration of your agreement to release from arrest the M/V MALTE B and your agreement to refrain from attaching any other property belonging to the owner of the said vessel in order to secure an in rem maritime claim against the M/V MALTE B in connection with your claim for alleged loss or damage to the above-referenced cargo, the undersigned Association hereby agrees:

1. To file or cause to be filed, upon your demand, an appearance on behalf of the owners of the M/V MALTE B in any suit which you may timely commence against the vessel and/or her owners in the United States District Court for the Southern District of New York, on account of loss and/or damage to cargo as per the bills of lading referenced above and to file or cause to be filed a claim of owner to the said vessel in any such suit.

2. In the event that a final judgment (after appeal, if any), be entered in your favor against the M/V MALTE B or her owners in said lawsuit, then the undersigned agrees to pay and satisfy said final judgment up to, but not exceeding, the sum of $1.3 million (One Million and Three Hundred Thousand U.S. Dollars), inclusive of interest and costs, or any lesser amount awarded or settled between the parties without final judgment being rendered.

3. Upon demand and pursuant to court order, to cause to be filed a bond in form and sufficiency of surety satisfactory to you in the above amount securing your claim against said vessel in said suit.

4. In the event the bond referred to under paragraph 3 above is filed, the undersigned shall have no further obligation under paragraph 2 above.

It is also understood and agreed that:

     A.   The issuance of this letter of undertaking is without prejudice to any and all rights, defenses and objections, excluding jurisdictional or venue defenses, which the M/V MALTE B and/or her owners may have with regard to your claim as aforesaid.

     B.   In the event the proceedings referred to in paragraph 1 are terminated or dismissed without judgment being rendered in your favor, or in the event that payment of your claim or of an agreed settlement of your claim is made to you, this letter of undertaking shall be returned to the undersigned Association.

     C.   The signing of this letter of undertaking by Charlotte Valentin, Asst. Vice President of Anchor Marine Claims Services Inc. shall not be construed as binding upon her personally, nor binding upon Anchor Marine Claims Services Inc., but is to be binding only on the undersigned Association.

Very truly yours,

ASSURANCEFORENINGEN SKULD

By:  ANCHOR MARINE CLAIMS SERVICES INC.
     As Attorneys-in-Fact for Assuranceforeningen Skuld

Per:

     Charlotte Valentin
     Asst. Vice President

Pursuant to telephone authorization of March 9, 2006

- 2 -

# EXHIBIT B

# MECÂNICA

SEDE - HEAD QUARTER
Rua Prof. Jose Vieira de Mendonça, 3011 - Engenho Nogueira
CEP: 31310-260 - TEL.: 55 031 3499-3653  FAX: 55 031 3443-3552
Belo Horizonte - MG - BRASIL
CNPJ: 17.500.224/0001-65

FABRICA - PLANT
Rodovia BR 381, Km 206 - Horto
CEP: 36160-900 - TEL: 55 031 3829-3661  FAX: 55 031 3829-3846
Ipatinga - MG - BRASIL
CNPJ: 17.500.224/0002-46

| Nº EXP : | DATA (DATE) |
|---|---|
| 001/06 | JANUARY 12, 2006 |

| FATURA COMERCIAL
( COMMERCIAL INVOICE ) | COMPRADOR (BUYER) :
PERINI/O&G, A JOINT VENTURE
1022 LOWER SOUTH STREET
PEEKSKILL, NY 10566 - UNITED STATES |
|---|---|

| NAVIO (VESSEL) :
MALTE B | ARMADOR (SHIP OWNER) : |
|---|---|

| PORTO DE EMBARQUE (PORT OF SHIPMENT) :
VITORIA-ES-BRAZIL | PORTO DE DESTINO (PORT OF DESTINATION) :
NEW YORK, NY, USA |
|---|---|

| BANDEIRA (FLAG) :
ANTIQUA & BARBUDA | PRODUZIDO EM (MANUFACTURED IN) :
IPATINGA - MG - BRASIL | P. O. :
O. C. : |
|---|---|---|

| CONDIÇÕES (TERMS) :
DELIVERED DUTY PAID - DDP | MARCAÇÃO (MARKING) : |
|---|---|

FABRICANTE E EXPORTADOR (MANUFACTURER AND EXPORTER) :

## USIMINAS MECÂNICA S. A.

| MERCADORIAS    ( MERCHANDISES ) | | | |
|---|---|---|---|
| QUANTIDADE (QUANTITY) M.T | DISCRIMINAÇÃO ( DESCRIPTION ) | VALOR (VALUE) | |
| | | UNITARIO (PER UNIT M/T) | TOTAL |
| NET WEIGHT: 1985.162 MT | | US$ | US$ |
| | BRIDGE COMPONENTS. | | |
| | 511 BUNDLES
20 BOXES | | |
| | DDP NEW YORK/USA -------------------------------------
(FIVE MILLIONS SIXTY FOUR THOUSAND ONE HUNDRED SEVENTY SIX DOLLARS AND NINETY FOUR CENTS) | | 5,064,176.94 |
| | CONSIGNEE: PERINI/O&G, A JOINT VENTURE
1022 LOWER SOUTH STREET
PEEKSKILL, NY 10566 – UNITED STATES | | |
| | GROSS WEIGHT: 1985.162 MT | | |
| | MADE IN BRAZIL | | |
| | USIMINAS MECÂNICA S/A | | |
| | _____
FRANCISCO BERNARDES DA SILVA
GENERAL EXPORT MANAGEMENT | | |

COPY

# EXHIBIT C

8-MAR-06    20:16    FROM-Raets Insurance Group B.V.    +31-10-4528219    T-377  P.002/003  F-629

# Liner Booking Note

| Agents (full style and address)<br>ALBAR LOGISTICS<br>AV. MARECHAL FLORIANO, 19 – SUITE 1201 – CENTRO<br>CEP: 20080-003 – RIO DE JANEIRO – RJ – BRAZIL | Booking Note number<br>X |
|---|---|
| | Vessel<br>MV BELUGA ENDURANCE OR SUBS |
| | Time for shipment (about)<br>SEE RIDER CLAUSE 21 |

| Carrier (full style and address)<br>BBC CHARTERING & LOGISTIC GMBH & CO. KG<br>HAFENSTR. 12 – 26789 LEER<br>AS AGENTS TO CARRIER | Port of loading<br>1 SPSB AAAA VITORIA OR PRAIA MOLE AT CHRTRS OPTION. |
|---|---|
| | Port of discharge<br>NEW YORK - RED HOOK TERMINAL, CARRIER'S BERTH. |
| | Place and date<br>RIO DE JANEIRO, 22ND JULY, 2005. |

| Merchant (full style and address)<br>USIMINAS MECÂNICA<br>RUA PROFESSOR JOSÉ VIEIRA DE MENDONÇA, 3011<br>ENGENHO NOGUEIRA – CEP.: 31310-260 – BELO HORIZONTE<br>MINAS GERAIS, BRAZIL. | Merchant's representatives at loading port (full style and address)<br>SAME AS MERCHANTS |
|---|---|

| Marks and Numbers | Number and kind of packages; description of goods | Gross weight | Net weight | Measurement |
|---|---|---|---|---|
| | P / C OF BRIDGE DECKS AND ITS MISCELLANEOUS<br>BEING 4000 CBM / 2000 TONS 15% MOLCHOPT<br>(PACKING LIST ATTACHED) | | 2000 TONS | 4000 CBM |

| Freight details, charges, etc. | Detention/Demurrage |
|---|---|
| - FREIGHT: SEE RIDER CLAUSE 23<br>- TIME LOST DUE TO PORT / BERTH CONGESTION / CLOSURE OR DUE TO SWELL OR DUE<br>TO ANY OTHER REASON BEYOND CARRIER'S CONTROL BOTH ENDS TO BE DEEMED AS<br>VESSEL ON DETENTION AT THE AGREED DETENTION RATE;<br>- FREIGHT FULLY PREPAID ON SIGNING BUT PRIOR TO RELEASING BILLS OF LADING INTO<br>OWNERS NOMINATED BANK ACCOUNT DNRVAOCLONL;<br>ANY TAXES / DUES / DUTIES ON FREIGHT AND/OR CARGO OR CALCULATED ON SAME<br>INCL LOCAL DOCK DUES / WHARFAGE / THC / TO BE FOR CHARTERERS ACCOUNT;<br>- COMMISSION: 2.5% TO ALBAR LOGISTICS | SEE RIDER CLAUSE 22 |

| Additional Terms |
|---|
| - OWNERS AGENTS BOTH ENDS ;<br>- GERMAN LAW AND ARBITRATION ;<br>- ON / UNDER DECK IN CARRIER'S OPTION, IF ON DECK AT SHIPPER'S / MERCHANT'S RISK AND EXPENSE, BILLS OF LADING TO<br>BE CLAUSED ACCORDINGLY;<br>ANY SPECIALLY REQUIRED SPREADERS, LIFTING BEAMS OR OTHER LIFTING EQUIPMENT INCLUDING DUNNAGE AND<br>LASHING MATERIAL AND CRADLES OR OTHER MEANS OF SUPPORT NOT ALREADY ON BOARD THE VESSEL TO BE<br>PURCHASED-SUPPLIED BY MERCHANT;<br>CGO TO BE FITTED WITH SUITABLE LIFTING LUGS OR OTHER ADEQUATE MEANS OF LIFTING AND CENTER OF GRAVITY TO BE<br>CLEARLY INDICATED. SUFFICIENT LASHING POINTS FOR SECURING TO BE PLACED ON THE CARGO. IF ITEMS ARE NOT FLAT<br>AT THEIR BOTTOMS THEN A FOOTPRINT SKETCH IS REQUESTED. CGO TO BE SUITABLY FOR OCEAN TRANSPORTATION; |

| Signature, Merchant<br>USIMINAS MECÂNICA | Signature, Carrier<br>BBC DO BRASIL LTDA<br>AS AGENTS ONLY FOR<br>BBC CHARTERING & LOGISTIC GMBH & CO. KG. |
|---|---|

This contract is subject to the terms of the Carrier's Liner Bill of Lading which can be found on the reverse side.

8-MAR-06    20:16    FROM-Raets Insurance Group B.V.                +31-10-4528219        T-377  P.003/003  F-629

## BOOKING NOTE RIDER – BBC Chartering & Logistic GmbH & Co. KG

20  **TERMS:** Free in Lashed / Secured / Dunnaged - Liner Out Hook.

21  **TIME FOR SHIPMENT:**

   1ST SHIPMENT: August 26th – 30th, 2005.

22  **DEMURRAGE / DETENTION:**

   Master to tender NOR SHINC W.W.W.W. and Load rate to apply.   600 metric tons per day  SHINC

   Cargo to be received as fast as vessel can discharge otherwise detention to apply.

   Demurrage / Detention of US$ 18,000.00 PDPR

   Any Demurrage / Detention payable prior discharge.

   2.5 free days for each shipment / voy at loading port.

23  **FREIGHT**

   US$ 90.00 W/M plus additional fee of US$ 25,000.00 net/net

24.  **MEASUREMENT** All cargoes to be measured at the extremes for the purpose of calculating cargo cubic. Carrier's surveyor may measure and/or weigh the cargo to determine measure and weight. Carrier's measure and weight (which can be taken from terminal's receiving report) to be used for purposes of calculating freight charges.

25.  **AGENTS/STEVEDORING:**  Carrier's agents and stevedores at both ends.

26.  **CARGOES BOOKED TO THE USA:** All cargo being discharge or transiting through us waters must be identified and described on the cargo manifest filed with the us customs service 24 hours before such cargo is loaded. If the carrier does not receive this information timely so that carrier can comply with new regulations, then regrettably the carrier will have to assess any applicable fines or penalties against the merchant in accordance with clause 11(d) of carrier's bill of lading.

Signature (Carrier)                                    Signature (Merchant)

---
BBC do BRASIL LTDA. As agents only for                ---
BBC Chartering & Logistic GmbH & Co. KG               Usiminas Mecânica

# EXHIBIT D

# LINER BILL OF LADING

| Shipper | B/L. No. |
|---|---|
| **USIMINAS MECÂNICA S/A** | **BBCH1190087VN001** |
| **RUA HUM, 2000 – BAIRRO USIMINAS** | Reference No. |
| **CEP 35160-900 – IPATINGA- MG – BRAZIL** | **LOGSEA 061/05** |
| | Shipping period |

| Consignee | Notify address |
|---|---|
| **PERINI/O&G A JOINT VENTURE** | **BERTLING LOGISTICS INC** |
| **1022 LOWER SOUTH STREET** | **15000 VICKERY DRIVE** |
| **PEEKSKILL, NY 10566** | **HOUSTON, TX 77032 - TEL 1 281 774-2300** |
| **ATT: ANDREW LEVINSON – (914) 739-1900** | **S.J. STILE ASSOCIATES LTD** |
| | **106 MORRIS AVENUE, SPRINGFIELD- NJ** |
| | **ZIP 07081** |

| Port of loading | Port/place of trans-shipment | Vessel | |
|---|---|---|---|
| **VITORIA** | | **MALTE B** | **1ST ORIGINAL** |
| Port of discharge | Place of delivery by on-carrier | Carrier * | |
| **NEW YORK** | | **BBC CHARTERING & LOGISTIC GMBH** | |

| Marks and Numbers | Number and kind of packages; description of goods | Gross weight/net weight | Measurement |
|---|---|---|---|
| | SAID TO BE | SAID TO WEIGH | SAID TO MEASURE |

BRIDGE COMPONENTS

531 VOLUMES COMPOSED OF:         1.985.162, KGS    3.951,940M³

74 BUNDLES WITH TRACKBEAMS; 19 BUNDLES WITH FITTINGS;
21 BUNDLES WITH SUPPORTS; 01 BENT PLANT;92 BUNDLES WITH BRACING; 110 BUNDLES WITH BARRIERS; 23 BUNDLES WITH BRACKETS; 54 BUNDLES WITH CONNECTORS; 88 BUNDLES WITH DECKS; 44 BUNDLES WITH STEEL PLATES; 11 BUNDLES WITH RAILING;01 BUNDLE WITH GUIDE;03 BUNDLES WITH HANDRAIL WEDGES; 20 CASES.

**MASTER'S REMARKS:**
1. ON 11TH OF JANUARY 2006 AT 16.30 LT WHILE LOADING SLINGS WERE TORN AND CARGO DROPPED AND SEVERAL OF ALUMINUM CONSTRUCTIONS WERE BENT.
2. NUMBERS OF DAMAGED ITEMS: F307, F305, F510, F509, F508, F507, F506, F505, F503, F527
3. ON 12TH OF JANUARY 2006 AT 16.20 LT WHILE LOADING BUNDLE OF STEEL BAND SLINGS WERE TORN, BUNDLE FALLEN IN CARGO HOLD AND SEVERAL STEEL BANDS WERE BENT. NUMBERS NOT AVAILABLE.

"SHIPPED ON BOARD"
" FREIGHT PREPAID"
RE: 06/0035344-001    DDE: 2060066171/7    NCM: 7308.10.90

"BUNDLES NRS. F01, F02, F03, F05, F06, F07, F09, F10, F11, F12, F13, F14, F15, F16, F17, F18, F19, F20, F21, F22, F24, F25, F27, F28, F29, F30, F31, F32, F33, F34, F36, F37, F38, F39, F40, F41, F42, F43, F44, F47, F49, F50, F51, F52, F53, F54, F55, F56, F57, F58, F59, F60, F61, F62, F63, F64, F66, F67, F69, F69, F70, F71, F175, F176, F177, F302, F305, 206, F208, F211, F213, F217, F220, F226, F227, F230, F231, F342, F245, F249, F387, F389, F294, F399, F396, F391, F402, F432, F494, F495, F496, F437, F439, F440, F441, F442, F443, F444, F447, F448, F449, F451, F452, F453, F464, 3 BUNDLES TRACK BEAMS(NOT IDENTIFIED), 1 BUNDLE BARRIERS(NOT IDENTIFIED), CARRIED ON DECK AT SHIPPER'S/CHARTERER'S RECEIVER'S RISK AS TO PERILS INHERENT IN SUCH CARRIAGE, ANY WARRANTY OF SEAWORTHINESS OF THE VESSEL EXPRESLY WAIVED BY THE SHIPPER / CHARTERER/ RECEIVER, AND IN ALL OTHER RESPECTS SUBJECT TO THE PROVISIONS OF THE UNITED STATES CARRIAGE OF GOODS BY SEA ACT, 1936"

| Freight details, charges, etc. | Declaration of higher value of cargo |
|---|---|

| Additional Terms |
|---|
| **FORWARDING AGENT:** |
| **ALBAR CONSULTORIA LTDA** |
| **RUA MARECHAL FLORIANO, 19 SALA 1201** |
| **CENTRO - RIO DE JANEIRO - RJ - BRAZIL** |
| **TEL.: 55 21 2223 76 90** |

| Detention/Demurrage rate per day prorated | Freight Payable at | Place of issue | Signature for and on behalf of the Carrier |
|---|---|---|---|
| | **FREIGHT PREPAID** | **VITÓRIA, ES** | |
| | Number of original B/L. | Date of issue | **TRANSREGIONAL SHIPPING AGENCY LTD** |
| | **1 / THREE** | **16TH JANUARY, 2006** | **AS AGENTS FOR AND ON BEHALF OF CAPT. YURIY STORCHEVOY THE MASTER OF M/V "MALTE B".** |

* Although this Bill of Lading may be issued by BBC Chartering and Logistic GmbH & Co. KG, unless BBC Chartering and Logistic GmbH & Co. KG is listed as Carrier, BBC Chartering and Logistic GmbH & Co. KG is acting only as Agent for the Carrier.

# EXHIBIT E

**BBC Chartering & Logistic GmbH & Co. KG (Org No: 018887)**
**FMC - 001 Worldwide, Between US & Foreign Ports and Points**

### Rule 4 - : Sample "Liner Bill of Lading"

**Rate Related:** N

**Apply By Default:** Y

**Filed:** 2/23/2004

**Effective:** 2/23/2004

**Expiration:**

**Amendment Type:**

BILL OF LADING TERMS

1.    Applicability

The terms of this Bill of Lading shall apply and supercede all other terms regarding this shipment *except* when BBC Chartering & Logistic GmbH & Co. KG is designated as the Carrier on the reverse side *and* the voyage involves either loading or discharging cargo in a US port in which case the terms on file with the Federal Maritime Commission shall apply.

2.    Definitions

Wherever the term "Merchant" is used in this Bill of Lading, it shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the Cargo. Wherever the term "Carrier" is used, this term shall be deemed to include the Operator, the Disponent Owner of the vessel, and the Owner of the vessel all in accordance with Clause 19.

3.    General Paramount Clause.

(a). Hague Rules are Paramount.

Unless otherwise provided herein, the Hague Rules contained in the International Convention for the Unification of Certain Rules Relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply. In respect of shipments to which there is no such enactments are compulsorily applicable, the terms of said Convention shall apply. Where the Hague Rules apply, they shall also apply to the period before loading and after discharge where the carrier may be deemed to have custody or control of such goods.

(b). Trades where Hague-Visby Rules apply.

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on 23rd February 1928 ("The Hague-Visby Rules") apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharge and while the goods are in the charge of another carrier, and to deck cargo and live animals.

4.    Jurisdiction.

All claims against the Carrier arising from or in connection with this Bill of Lading or the underlying contract of carriage of carriage shall be brought in the court of relevant jurisdiction in Hamburg, Germany with German law to apply. Nothing in the clause shall be construed to prevent the Carrier from filing suit in any jurisdiction for claims arising under or in connection with this Bill of Lading or the underlying contract of carriage.

02/21/2006 TUE 13:28  [TX/RX NO 9534]  ☒002

5.   Period of Responsibility.

Unless otherwise stated, the Carrier shall have custody of the goods from tackle to tackle ("hook/hook") only. The Carrier or Carrier's agent shall not be responsible for any loss of or damage to the goods during the period before loading and after discharge from the vessel, howsoever such loss or damage arises.

6.   The Scope of the Voyage.

(a). The voyage shall not be limited to the direct route between the loading or discharge port, but may include at the carrier's option and sole discretion, calling at any other port or place, whether en route or within rotation or not, or whether advertised or not. The Carrier shall be at liberty to determine the vessel's schedule and rotation and, as the vessel may be in a non-liner service, the schedule and rotation may include ports for loading, discharging, bunkering or maintenance which are not directly en route of the loading and discharge port as specified in this bill of lading. The Carrier has the liberty to change the vessel's port rotation, to add additional ports of loading, discharge or bunkering and otherwise to alter the voyage as initially planned at any time including while the vessel is en route. These changes may substantially change the course of the voyage and the route the vessel may take, and may lengthen or shorten the actual time of the voyage. Unless stated on the reverse side, the Merchants have no right to a direct voyage and in any event there will be no cause of action for the delay of the cargo. Any voyage estimates are accordingly given without prejudice and without recourse.

(b). Unless the cargo is described as a full and complete cargo on the reverse side of this Bill of Lading, the Carrier shall have the liberty of restowing the cargo and loading and discharging other part cargoes for the account of others than the Merchants from places en route or not en route to places en route or not en route.

7.   Substitution of the Vessel, Transshipment and Forwarding.

Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport, proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of destination, and to transship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense but at Merchant's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods is other than the vessel's port of discharge, the Carrier acts as Forwarding Agent only. The Carrier shall always have the right to transship the cargo at any intermediate or other port via barge, quay or other vessel and can use vessel's gear, floating or shore cranes as required. The responsibility of the Carrier shall be limited to the part of the transport performed by the Carrier on vessels under the Carrier's management.

8. Lighterage.

At any ports or places of discharge where the Carrier is required by law or custom to deliver the cargo to port authorities or to discharge the cargo to or load the cargo from, lighters or other craft, delivery or receipt by the Carrier shall take place at the end of the vessel's tackle or when the Carrier no longer has control of the goods, and the lighterage or custody thereafter, as the case may be, shall be at the risk and expense of the merchant.

9. Loading, Discharge and Delivery.

(a). All loading, discharge and delivery shall be arranged by Carrier's agents unless otherwise agreed. All delivery takes place at the end of vessel's hook unless otherwise specified.
Landing, storing and delivery shall be for merchant's account. Loading and discharging may commence without previous notice. The Merchants shall be responsible for providing all spreader bars, lifting frames, slings or saddles. The securing of the cargo to be accomplished to Master's satisfaction. The time and expense of additional cargo securing required by the Merchant or Merchant's representative or surveyor to be for Merchant's account.

(b). At the loadport, if the vessel arrives and the goods are not available for loading, the vessel may wait on detention for 48 hours and if the goods are still not available, the vessel may leave the port without any further notice and the merchant shall owe full deadfreight.

(c). At the loadport, the Merchant or his Agent shall tender the goods when the vessel is ready to load and as fast

as the vessel can receive and, if required by the carrier, outside the ordinary working hours notwithstanding any custom of the port. If the Merchant does not comply with tendering the cargo when the vessel is ready to receive, then the Carrier shall be relieved of any further obligation and may leave the port without further notice and the Merchant shall be responsible for all deadfreight or breach of contract damages which shall be calculated at the freight rate.

(d). At this discharge port, the Merchant shall take delivery of the goods as fast as the vessel can deliver and, if required by the Carrier, also outside the normal working hours of the port. Otherwise, the Carrier shall be at liberty to discharge the goods and any discharge shall be considered a true fulfillment of the contract. If inadequate arrangements have been made to receive the goods and the vessel cannot berth or commence or complete discharge due to the lack of arrangements, then the Carrier may wait up to 48 hours on detention, then, at the Carrier's election, the Carrier may leave the port and discharge the goods at any available and convenient port, with the contract then being considered fulfilled and no further obligations owed to the Merchant. All such extra expenses, including oncarriage to the final port of destination (as mentioned in the bill of lading) shall be borne by the Merchant.

(e). The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.

(f). If the goods are not applied for within a reasonable time, the Carrier may sell same privately or by auction.

(g). The Merchant shall accept a reasonable proportion of unidentified loose cargo.

(h). If the cargo is to be carried pursuant to the terms free in/liner out as designated on the reverse side of this Bill of Lading, then the Merchant shall be responsible for the stevedoring expenses of loading the cargo as well as liable for the negligence of the stevedores at the loadport, notwithstanding that the Master is responsible for the seaworthiness of the vessel. Allowed laytime for loading as designated on the front of this Bill of Lading shall commence to count immediately upon receipt of vessel's Notice of Readiness which may be tendered at the Port of Loading any time day or night, Saturdays, Sundays, Holidays included whether in berth or not, whether in port of not, whether custom cleared or not.

(i). If the cargo is to be carried pursuant to the terms liner in/free out as designated on the reverse side of this Bill of Lading, then the Merchant shall be responsible for the stevedoring expenses of discharging the cargo as well as liable for the negligence of the stevedores at the discharge port, notwithstanding that the Master is responsible for the seaworthiness of the vessel. Allowed laytime for discharging as designated on the front of this Bill of Lading shall commence to count immediately upon receipt of vessel's Notice of Readiness which may be tendered at the Port of Discharging any time day or night, Saturdays, Sundays, Holidays included whether in berth or not, whether in port of not, whether custom cleared or not.

10. Live Animals and Deck Cargo.

Unless underdeck stowage is specifically contracted, the Carrier may stow the goods on or underdeck at the Carrier's option. The Carrier shall have no liability whatsoever with respect to live animals and deck cargo. However, if any court or tribunal finds that the Carrier shall have liability, then such liability shall be subject to limitation in accordance with the Hague Rules referred to in Paragraph 3 above or US COGSA as referred to in Paragraph 4 and the goods shall be considered to have been carried always subject to these Rules. The Carrier shall not be liable for any loss or damage resulting from any act, neglect or default of the Carrier's servants in the management of such animals or deck cargo, notwithstanding anything contained in Clause 20.

11. Options.

All port(s) of discharge for all optional cargo must be declared to the Carrier 48 hours before arrival at the first optional port. In the absence of such declaration, the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall be considered as having been fulfilled. Any option can be exercised for the total quantity under this Bill of Lading only.

12 Freight and Charges.

(a). All freight shall be considered to be pre-payable freight and, whether actually paid or not, shall be considered as fully earned pro rata upon loading and is discountless and non-returnable in any event ship and/or cargo lost or not lost. The Carrier's claim for any other charges under this contract including but not limited to detention,

demurrage, deadfreight and attorneys' fees shall be considered to be payable in like manner as soon as the charges have been incurred.

(b). Any detention or demurrage incurred shall be paid day by day if demanded by the Carrier. The detention and demurrage rate shall be US $10,000 per day pro rata unless such rate is provided on the reverse side of this Bill of Lading in which case, such rate shall control.

(c). Interest for all charges shall accrue at 12% per annum compounded daily from the date such charges were due.

(d). The Merchant shall be liable for expenses of fumigation and gathering and sorting loose cargo and weighing onboard and expenses incurred in repairing damage to and replacing of packing due to excepted clauses and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons. The Merchants shall also be responsible for all truck loading/unloading, Terminal Handling Charges, hooking on/unhooking, wharfage, and dock dues, etc. The Merchant shall also be responsible for the German QWTC dues, Swedish Fairway dues, Receiving, Storing & Delivery dues and all other applicable dues or similar charges.

(e). Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant. All blocking and trapping dues and charges to be paid by the Merchant

(f). The Merchant shall be liable for all fines and/or losses which the Carrier, vessel or cargo may incur through violation of Customs House and/or import or export regulations and the Merchant shall indemnify the Carrier for any and all expenses including legal fees associated with same.

(g). The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight (200%) which would have been due if such declaration had been correctly given. For the purposes of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents/cargo inspected and the weight, measurement or value verified. Further, for the purposes of calculating cargo cubic, all cargo shall be measured at the extreme ends. Carrier's surveyor may measure and/or weigh the cargo to determine measure and weight. Carrier's measure and weight (which can be taken from the terminal's receiving report) to be used for the purposes of calculating freight charges.

(h). For any cancellation of contract, the Merchant shall owe 75% of the freight charged as liquidated damages less any stevedore or port expenses attributable to the cargo unless the vessel has commenced on the voyage toward the loadport in which case 100% of the freight shall be due and owing, less any stevedore or port expenses attributable to the cargo.

(i) All bookings and contracts made 'subject details' shall be considered to be valid and binding, and all terms herein shall apply.

13. Time Lost Due to Swell or Tide.

Any time lost during loading, transshipment or discharge, including all times waiting for berth, due to swell or tide shall count as detention for the Merchant's account.

14. Lien.

The Carrier shall have a lien on the cargo for any amount due under this contract including but not limited to freight, deadfreight, breach of contract damages, detention, demurrage, any vessel damage caused by or due to negligence or default of the Merchants, and any deviation costs necessitated by the negligence or default of the Merchants. The Carrier shall also have a lien on the cargo for the costs of recovering the amounts due under this contract and for the aforementioned vessel damage including all arbitrator, court, and attorneys' fees. The Carrier shall be entitled to sell the goods privately or at auction to cover any claims for amounts due, vessel damage or costs. The lien may be exercised by the Carrier either at the discharge port, or on board the vessel at the Carrier's option. If it is not possible, feasible or desirable to exercise the lien at the discharge port, the Carrier may take the goods to the most convenient port where such lien may be exercised and the Merchants shall be responsible for all associated costs including any return freight. In any event, the Carrier's lien shall survive delivery of the goods. If the Merchants issue further negotiable bills of lading or documents of title concerning the cargo, all such documents must give notice of the Carrier's lien.

Tariff Data Systems

### 15. Delay

The Carrier shall not be responsible or liable for any loss sustained by the Merchant for delay of the goods howsoever caused. In no event shall the Carrier or the Carrier's agents, servants or managers be liable for consequential damages.

### 16. General Average and Salvage.

General Average to be adjusted at any port or place at Carrier's option and to be settled in accordance with the 1974 York-Antwerp Rules. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers

### 17. Both-to-Blame Collision Clause. (This Clause to remain in effect even if unenforceable in the Courts of the United States of America).

If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, negligence default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the owner of said goods paid or payable by the other or non-carrying vessel or her Owner to the owner of said cargo and set-off, or recouped or recovered by the other or non-carrying vessel or vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to the colliding vessels or objects are at fault in respect of a collision or contact.

### 18. Government Directions, War, Epidemics, Ice, Strikes, etc.

(a). The Master and the Carrier shall have the liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance of the vessel the right to give such orders or directions or recommendations.

(b). Should it appear to the Master or Carrier that the performance of the transport would (1) expose the vessel or any goods onboard to risk of seizure or damage or delay, resulting from war, warlike conditions, hostilities or the threat of hostilities, terrorist activities or the threat of terrorist activities, blockades, riots, civil commotion or piracy, or (2) expose any person on board to such risk of injury, bodily harm, capture, kidnapping due to any of the aforementioned activities, then the Master may discharge the cargo at the port of loading or any other safe and convenient port without any further obligations owed to the Merchant, full freight having been earned.

(c). Should it appear that epidemics, quarantine, ice, labor troubles, labor obstructions, strikes, lockouts, any of which occurring either onboard or on shore, would (1) create difficulties in loading or discharging, or (2) prevent the vessel from reaching or leaving the port of loading or reaching or entering the port of discharge, or (3) discharging at the port of discharge in the usual manner and leaving again, all of which safely and without delay, the Master may discharge the cargo at the port of loading or any other convenient port, full freight having been earned.

(d). The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfillment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight to the discharge port if any, and a reasonable compensation for any service rendered to the goods.

(e). If any situation referred to in this clause may be anticipated, or if any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of lading is issued without any recourse.

(f). Any additional premium determined to be applicable by underwriters for breaching or exceeding trading limitations imposed by the London War Risk Trading Warranties to be for Merchant's account.

02/21/2006 TUE 13:28  [TX/RX NO 9534]  ☒006

19. Identity of Carrier.

(a). The Contract evidenced by this Bill of Lading is between the Merchant and the Carrier and/or Owner of the vessel named herein (or substitute vessel) and it is therefore agreed that said Owner or Carrier only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of this contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other party is the Carrier or Bailee of the goods shipped hereunder, all limitations of and exonerations from liability provided by law or by this Bill of Lading shall be available to such other party.

(b). It is further understood and agreed that any Line, Company or Agents who have executed this Bill of Lading for and on behalf of the Master are not a principal in the transaction and said Line, Company or Agents shall not be under any liability whatsoever arising out of this contract of carriage. Said Line, Company or Agents also shall not be liable as a Carrier nor as Bailee of the goods. If Merchant or their underwriters bring a claim against said Line, Company or Agents asserting that they are liable as a principal, all such costs required to defend same shall be recoverable from the Merchants.

20. Exemptions and Immunities of all Servants and Agents of the Carrier and Managers of the Vessel.

(a). It is hereby expressly agreed that no servant or agent or manager (including general, commercial, technical or crewing managers) of the Carrier or vessel (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchants for any loss, damage, or delay, arising from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions of this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability and limitation of liability applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant, agent or manager of the Carrier acting as aforesaid and for this purpose all of the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants, agents or managers from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.

(b). The Carrier shall be entitled to be paid by the Merchant on demand any sum recovered or recoverable by the Merchant or any other party from such servant, manager, or agent of the Carrier for any loss, damage or delay or otherwise.

21. Packaging, Optional Stowage and Unitization

(a). The Merchants shall ensure that all cargo is packed for ocean transportation with all centers of gravity marked, proper skids attached and, if required all cradles sturdy and the goods secured within the cradles and all spreader bars necessary available to the Carrier. Cargo to be fitted with suitable lifting lugs and sufficient lashing points for securing to be placed. If items are not flat at the bottom, a footprint sketch is required. Any special dunnaging to be for Merchant's account.

(b). Goods may be stowed by the Carrier as received, or, at Carrier's option, by means of containers, or similar articles of transport used to consolidate goods.

(c). Containers, trailers and transportable tanks whether stowed by the Carrier or received by the Carrier in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant and without further clausing of the bill of lading.

(d). The Carrier shall not have any liability for cargo stowed on deck, but in the event that the Carrier shall be found to be liable, then in conjunction with Paragraph 10, the carriage of the goods and the Carrier's liability shall be governed by the Hague Rules.

(e). All goods, whether carried on deck or not, shall contribute to general average and shall receive compensation in general average.

22. Survival of Terms and Exclusivity of Remedies.

The terms of this Bill of Lading shall be separable, and if any provision herein, or any part of any Paragraph shall be held to be invalid or unenforceable, such holding shall not affect the validity or enforceability of any other provision or part of this Bill of Lading.

It is expressly agreed that all causes of actions for damage to cargo shall be limited to contractual claims pursuant to the terms herein and the applicable conventions and legislation. All claims based in tort or delict against the carrier and the carrier's servants, agents or managers are hereby waived.

23. U.S. Trade, Period of Responsibility.

(a). In the case the Contract evidenced by this Bill of Lading is subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carrier's Custody.

(b). The number of packages designated on the reverse side of this Bill of Lading shall be considered to be the number of packages for limitation purposes. Each container shall be considered to be a package.

(c). US regulations stipulate that all cargo being discharged or transiting through US waters must be identified and description filed by the carrier with the US Customs service 24 hours before such cargo is loaded. If Merchants do not send information timely for Carrier to comply with US regulations, all fines, penalties shall be for Merchant's account.

# LINER BILL OF LADING TERMS

**BBC Chartering & Logistic GmbH & Co. KG (Org No: 018887)**

**FMC - 001 Worldwide, Between US & Foreign Ports and Points**

### Rule 4 - A: Sample Bill Of Lading,To be used with Charter Parties

Rate Related: N

Apply By Default: N

Filed: 2/23/2004

Effective: 2/23/2004

Expiration:

Amendment Type:

## BILL OF LADING

TO BE USED WITH CHARTER-PARTIES
CODE NAME: „CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL
MARITIME CONFERENCE (BIMCO)

### Conditions of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are here with incorporated.

(2) **General Paramount Clause.**
    (a)The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th
    August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the
    corresponding legislation of the country of destination shall apply, but in respect of shipment to which no such enactments are compulsorily
    applicable, the terms of the said Convention shall apply.

    (b)Trades where Hague-Visby Rules apply.
    In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.

    (c)The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) **General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994,or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master,
Pilot or Crew. The Charterers, Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) **New Jason Clause.**
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether

02/21/2006 TUE 13:28  [TX/RX NO 9534]  ☑010

due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo,
Shippers, Consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses
of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.  If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers.
Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges
thereon shall, if required, be made by the cargo, Shippers, Consignees or owners of the goods to the Carrier before delivery.

**(5) Both-to-Blame Collision Clause.**
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master,
Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will
indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owners in so far as such loss or liability represents loss of,
or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her Owners to the owners
of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her Owners as part of their claim against the carrying Vessel or the
Carrier.
The foregoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contract.

 For particulars of cargo, freight,
destination, etc., see overleaf.