UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

BBC CHARTERING & LOGISTIC GMBH &     :
CO. K.G.,

    :

        Plaintiffs,     :

    :

   vs.     :

    :

USIMINAS MECANICA S/A, PERINI O&G,     Index No.: 08-cv-200 (WHP)
PERINI CORP., O&G INDUSTRIES, INC., and   :
UNIBANCO AIG SEGUROS S/A,     **LIMITED APPEARANCE**

    :

        Defendants.     :

    :

    :

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Keith B. Dalen
Christopher M. Panagos

HILL RIVKINS & HAYDEN LLP
*Attorneys for Defendants Usiminas*
*Mecanica S/A and*
*Unibanco AIG Seguros S/A*
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212)-669-0600
Fax: (212)-669-0699

July 11, 2008

# TABLE OF CONTENTS

**Page No.**

TABLE OF AUTHORITIES……………………………………….. ii

INTRODUCTION………………………………………….. 1

FACTS…………………………………………………….. 1

FEDERAL MARITIME JURISDICTION IS
THE ONLY BASIS FOR SUBJECT MATTER
JURISDICTION IN THIS CASE…………………………….. 5

SUMMARY OF THE ARGUMENT……………………….. 6

POINT I
PLAINTIFF BBC CHARTERING CANNOT PROVE
THAT THE COURT HAS PERSONAL JURISDICTION
OVER DEFENDANTS USIMINAS AND UNIBANCO
AIG UNDER RULE 12(b)(2)…………………………………. 8

A.    UNIBANCO AIG IS NOT SUBJECT TO PERSONAL
      JURISDICTION IN UNITED STATES COURTS BY
      VIRTUE OF HAVING INSURED CARGO BOUND
      FOR UNITED STATES……………………………. 10

B.    USIMINAS MECANICA S/A LACKS SUFFICIENT
      CONTACTS TO WARRANT THE EXERCISE OF
      PERSONAL JURISDICTION AS TO PLAINTIFF'S
      ALLEGATIONS IN THIS CASE…………………….. 11

POINT II
THE RELATED DOCTRINES OF LIS ALIBI PENDENS,
INTERNATIONAL COMITY, ABSTENTION AND RES
JUDICATA WARRANT DISMISSAL OF THIS ACTION…….. 14

POINT III
FORUM NON CONVENIENS – IMPROPER VENUE…………. 19

CONCLUSION………………………………………………… 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                **Page No.**

*Beacon Enterprises, Inc. v. Menzies*
715 F.2d 757, 764 (2d Cir.1983)……………………………………………    10

*Cargill Ferrous Int'l v. M/V Medi Trader*
513 F.Supp.2d 609 (E.D.La. 2007)…………………………………………..    6

*Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*
770 F.Supp. 880 (S.D.N.Y. 1991)……………………………………………    15-16

*China Trade & Dev. Corp. v. M.V. Choong Yong*
837 F.2d 33 (2d Cir.1987)…………………………………………………..    17

*Complaint of Kreta Shipping, S.A.*
1998 WL 173167 (S.D.N.Y. 1998)……………………………………………    9-10

*Construtora Norbeto Oderbrecht S.A. v. General Elec. Co.*
2007 WL 3025699 (S.D.N.Y. 2007)………………………………………….    17

*Continental Time Corp. v. Swiss Credit Bank*
543 F.Supp. 408 (S.D.N.Y.1982)……………………………………………    15

*Contract Marine Carriers, Inc. v. Abbott Laboratories, Int'l*
1993 WL 106374 (S.D.N.Y. 1993)……………………………………………    9-11

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*
629 F.2d 786 (2d Cir. 1980)…………………………………………………    6

*Cutco Industries, Inc. v. Naughton*
806 F.2d 361 (2d Cir.1986)…………………………………………………    9

*Da Rocha v. Bell Helicopter Textron, Inc.*
451 F.Supp.2d 1318 (S.D.Fla. 2006)…………………………………………    17-18

*Del Ponte v. Universal City Development Partners, Ltd.*
2008 WL 169358 (S.D.N.Y. Jan. 16, 2008)……………………………………    8

*Hilton v. Guyot*
159 U.S. 113 (1895)…………………………………………………………    15

*IIT v. Vencap, Ltd.*
519 F.2d 1001 (2d Cir. 1975)………………………………………………..    6

*In re Marine Sulphur Queen*
460 F.2d 89 (2d Cir. 1972)……………………………………………    5

*Iragorri v. United Technologies Corp.*
274 F.3d 65 (2d Cir.2001)………………………………………….    20-21

*Itel Container Int'l Corp. v. Atlanttrafik Express Service, Ltd.*
686 F.Supp. 438 (S.D.N.Y. 1988)………………………………….    19

*Klinghoffer v. S.N.C. Achille Lauro*
937 F.2d 44 (2d Cir.1991)………………………………………….    9

*Laker Airways, Ltd. v. Sabena Belgian World Airlines*
731 F.2d 909 (D.C.Cir.1984)………………………………………    17

*Maersk, Inc. v. Neerwa, Inc.*
--- F.Supp.2d ---, 2008 WL 929481 (S.D.N.Y. Mar. 27, 2008)
(McMahon, J.)………………………………………………………...    19-21

*McGowan v. Smith*
52 N.Y.2d 268 (1981)………………………………………………    10

*Metropolitan Life Insurance Co. v. Robertson-Ceceo Corp.*
84 F.3d 560 (2d Cir. 1996)…………………………………………    8

*Piper Aircraft Co. V. Reyno*
454 U.S. 235, 249 (1981)…………………………………………..    19

*Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*
2008 WL 186637 (S.D.Fla. 2008)…………………………………    17

*Ringers' Dutchocs, Inc. v. S.S. S.L.180*
494 F.2d 678 (2d Cir.1974)………………………………………..    10

*Ronar, Inc. v. Wallace*
649 F.Supp. 310 (S.D.N.Y.1986)………………………………….    16

*Royal and Sun Alliance Ins. Co. of Canada v.*
*Century Intern. Arms, Inc.*
466 F.3d 88 (2d Cir. 2006)…………………………………………    15

*Seguros Del Estado, S.A. v. Scientific Games, Inc.*
262 F.3d 1164 (11th Cir. 2001)…………………………………….    14

*Turner Entertainment Co. v. Degeto Film GmbH*
25 F.3d 1512 (7th Cir. 1994)………………………………………    15,17

**Statutes, Rules, Regulations**

Fed. R. Civ. P. 9(h)……………………………………………..    5

Fed. R. Civ. P. 12(b)(2)…………………………………………..    1,8

CPLR §§301-302………………………………………………    *passim*

28 U.S.C. §1331……………………………………………….    5

28 U.S.C. §1332……………………………………………….    5

United States Carriage of Goods by Sea Act ("COGSA",
46 U.S.C. §30701, *et seq.*, 49 Stat. 1207)……………………………    5

**Other Authorities**

Grant Gilmore & Charles L. Black, Jr.
*The Law of Admiralty*, 2d ed. §3-19…………………………………….    13

## INTRODUCTION

Defendants Usiminas Mecanica S/A ("Usiminas") and Unibanco AIG Seguros S/A ("Unibanco AIG"), by and through their attorneys Hill Rivkins & Hayden LLP, making a limited and restricted appearance solely for the purposes of making the instant motion, respectfully submit this Memorandum of Law in support of their motion for an order dismissing the complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and CPLR §§301-302, *lis alibi pendens*, *res judicata*, and *forum non-conveniens*.

## FACTS

This case ultimately relates to damage during ocean transit to a cargo of steel bridge components sold by Defendant Usiminas, a corporation with offices in Brazil, to its U.S. customer Perini O&G ("Perini") and transported by the M/V Malte B from Vitória, Brazil to Red Hook, Brooklyn, New York. The terms of the commercial invoice from Usiminas to Perini have DDP "delivered duty paid" terms. (See Declaration of Keith B. Dalen, dated May 30, 2008, Ex. B). Therefore, Usiminas bore the risk of loss in transit as between itself and Perini. Defendant Unibanco AIG is a Brazilian insurance company which is a joint venture between Unibanco S/A (50.0056%) and American International Group (49.9021%) and which issued a cargo insurance policy covering the cargo in transit to Usiminas. (See Declaration of Ney Ferraz Dias and Lauriberto Tadeu Tavares, dated May 5, 2008, ¶2).

Plaintiff BBC Chartering & Logistic GmbH & Co. KG ("BBC") is believed to be the time charterer/disponent owner of the M/V Malte B and would have had effective control over the vessel in January 2006: it could direct the vessel to proceed at its instructions and sub-charter/sub-contract the use of the ship at its option. Although not appearing in its complaint, the actual owner of the vessel at all relevant times was W. Bockstiegel GmbH & Reederei of Emgen, Germany and the ship was registered in Antigua & Barbuda.

Usiminas entered into a contract of affreightment with BBC, set forth in a Booking Note between Usiminas and BBC through its local agent BBC do Brasil Ltda., dated July 22, 2005, to procure a ship and move its cargo from Brazil to New York. (See Dalen Decl. Ex. C). The Booking Note provided, among other things, "Any taxes/dues to be for charterers account" "owners agents both ends", "German law and arbitration". *Id.* The Booking Note also states "This contract is subject to the terms of the Carrier's Liner Bill of Lading which can be found on the reverse side." *Id.* The Booking Note Rider also provided for the payment of freight at a rate of "US $90.00 W/M plus additional fee of US $25,000.00 net/net", "Demurrage/Detention of $18,000.00 PDPR", and "25. AGENTS/STEVEDORING: Carrier's agents and stevedores at both ends." *Id.*

BBC's "Liner Bill of Lading Terms" states:

Applicability-
The terms of this Bill of Lading shall apply and supercede [sic] all other terms regarding this shipment except when BBC Chartering & Logistic GmbH & Co. KG is designated as the Carrier on the reverse side and the voyage involves either loading or discharging cargo in a United States' port in which case the terms on file with the United States Federal Maritime Commission for BBC Chartering & Logistic GmbH shall apply.

Jurisdiction-
All Claims against the Carrier arising from or in connection with this Bill
of lading or the underlying contract of carriage shall be brought in the
court of relevant jurisdiction in Hamburg, Germany with German law to
apply.  Nothing in this clause shall be construed to prevent the Carrier
from filing suit in any jurisdiction for claims arising under or in
connection with this Bill of Lading or the underlying contract of carriage.

(See Dalen Decl. Ex D).  While there is no tariff "on file with the United States Federal Maritime Commission", BBC Chartering has designated an online publisher www.tafiffdatasystems.com to provide limited access to its tariff as required by FMC regulations.  It appears that BBC's tariff "FMC 001" required by the FMC regulations for vessel operating common carriers is identical to BBC's "Liner Bill of Lading Terms" and contains the same "Applicability" and "Jurisdiction" paragraphs as quoted above.  (See Dalen Decl. Ex. E).

On January 15, 2006, the cargo was fully loaded aboard the Malte B in good order and condition and departed Vitoria, Brazil bound for New York.  (Dalen Decl. Ex. D).  A bill of lading, no. BBCH1196067VN001, was issued on January 15, 2006 by Transregional Shipping Agency Ltd "as agents for and on behalf of Capt. Yuriy Storchevoy the Master of M/V 'Malte B'" and listing the carrier as BBC Chartering & Logistic GmbH. *Id.*  When the vessel arrived a significant portion of the cargo was damaged and a significant portion was not delivered.  According to the vessel's captain, some time in route the vessel encountered rough weather and the cargo was damage and a portion was lost overboard as a result.

As the cargo suffered loss and damage in transit, Unibanco AIG compensated Usiminas under the terms of the cargo insurance policy and thereby became subrogated to its rights to pursue responsible third parties. Following a cargo survey during and after discharge from the Malte B, Unibanco AIG determined that improper lashing and securing of the cargo and the stowage of cargo on deck were the causes of the cargo breaking free, with a portion lost overboard and another portion damaged, and that such improper lashing and stowage on deck was carried out by stevedores acting as agents for BBC in Vitoria. Accordingly, Unibanco commenced a lawsuit in Santos, Brazil against BBC Chartering alleging that the carrier was liable for the loss and damage. (See Declaration of Dr. Christian Smera, dated May 27, 2008, ¶¶3-4). BBC answered and appeared in the action, and raised several challenges to the jurisdiction of the court which was denied. (Smera Decl. ¶5). On February 12, 2008 a judgment was rendered in favor of Unibanco and against BBC in the amount of R$ 52,337.41 (approximately US $32,000). (Smera Decl. ¶6). Unibanco is currently appealing only as to the quantum of damages awarded. *Id.*

Prior to the commencement of the lawsuit in Brazil, Usiminas sought security for its claims by seeking to arrest the M/V Malte B on a subsequent voyage call to the port of Tampa, Florida. In exchange for not arresting the vessel, the owner of the M/V Malte B (i.e. W. Bockstiegel GmbH & Reederi), through its P&I Club Assuranceforeningen Skuld, issued a Letter of Undertaking, dated March 10, 2006, in which it agreed to file an appearance as owner in any suit commenced in the Southern District of New York. (Dalen Decl. Ex. A). No suit was ever commenced in this district and the Letter of

4

Undertaking was returned to the owners P&I Club. (Dalen Decl. ¶2). Plaintiff BBC had

no involvement whatsoever with the suit in Tampa and the Letter of Undertaking.

Following the judgment in Brazil, BBC commenced this action seeking to

invalidate and/or declare invalid the Brazilian judgment and seeking to have this court

issue its own countervailing judgment on the same subject matter.

## FEDERAL MARITIME JURISDICTION IS THE ONLY BASIS FOR SUBJECT MATTER JURISDICTION IN THIS CASE

This is a maritime claim within the meaning of Fed. R. Civ. P. 9(h) and 28 U.S.C.

§1333 in that Plaintiff's claim arises under a Booking Note, a type of contract of

affreightment and also a maritime contract, and or the Bill of Lading. 28 U.S.C. §1331;

*Chase Bag Co. v. U.S.*, 71 Ct.Cl. 264, 1930 AMC 191, 1930 WL 2591 (Ct.Cl. 1930).

The jurisdictional statement in Plaintiff's complaint erroneously alleges Federal

Question jurisdiction under 28 U.S.C. 1331 claiming that the United States Carriage of

Goods by Sea Act ("COGSA", 46 U.S.C. §30701, *et seq.*, 49 Stat. 1207) applies to this

claim by operation of law. COGSA only applies to carriage of cargo to or from U.S.

ports in common carriage. COGSA §1(b) ("The term 'contract of carriage' applies only

to contracts of carriage…from the moment at which such bill of lading or similar

document of title regulates the relations between a carrier and holder of same."); *In re*

*Marine Sulphur Queen*, 460 F.2d 89, 103 (2d Cir. 1972) ( "A bill of lading ... does not

perform [as a contract for the carriage of goods] for the shipper and the carrier where there is a charter party containing the terms of the carriage contract."). However, the carriage at issue in this case was pursuant to a Booking Note and in private carriage. *Cargill Ferrous Int'l v. M/V Medi Trader*, 513 F.Supp.2d 609, 624 (E.D.La. 2007) ("bills of lading which are also covered by a charter party that are not negotiated do not form the applicable contract of carriage").

Plaintiff also alleges diversity jurisdiction under 28 U.S.C. §1332. However, "Diversity jurisdiction under 28 U.S.C. § 1332 is defeated by the presence of aliens both as plaintiffs and as defendants." *IIT v. Vencap, Ltd.*, 519 F.2d 1001 (2d Cir. 1975); accord *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 789-790 (2d Cir. 1980). It is undisputed as stated in the Complaint, that Plaintiff BBC is a German corporation or other business entity, and that Defendants Usiminas and Unibanco AIG are Brazilian business entities. Therefore, diversity of citizenship is lacking.

## SUMMARY OF THE ARGUMENT

1. BBC has not and cannot allege proper personal jurisdiction over Unibanco AIG Seguros S/A. It has insufficient contacts with New York and it is well established that the insuring of a cargo bound for the United States by a foreign insurer does not subject it to personal jurisdiction in the courts of the United States.

2. BBC has not alleged proper personal jurisdiction over Usiminas Mecanica S/A. Its claims arise under a contract negotiated and settled in Brazil with Usiminas, a Brazilian company. It cannot claim personal jurisdiction in New York over Usiminas as a third-party based upon a sales contract betweem Usiminas and its customer Perini O&G. Any discovery it may have will further demonstrate that this court lacks jurisdiction over defendants for BBC's claims.

3. Unibanco and BBC fully litigated this matter in Brazil. BBC lost and is attempting to circumvent that judgment by filing this action, notwithstanding that the quantum of liability was substantially limited in its favor. The related principles of *lis alibi pendens*, comity, international abstention, and *res judicata* all counsel in favor of dismissal of this action under the circumstances.

4. For substantially the same reasons that warrant dismissal pursuant to (3) above, the common law doctrine of *forum non conveniens*, and the balance of public and private interest factors, also favors the dismissal of this action in favor of the first-filed action in Santos, Brazil.

## POINT I

## PLAINTIFF BBC CHARTERING CANNOT PROVE THAT THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS USIMINAS AND UNIBANCO AIG UNDER RULE 12(b)(2)

At all times the plaintiff bears the burden of demonstrating personal jurisdiction over a defendant, and if the court affords the plaintiff jurisdictional discovery, "the plaintiff must demonstrate jurisdiction by a preponderance of the evidence." *Del Ponte v. Universal City Development Partners, Ltd.*, 2008 WL 169358, *2, n.1 (S.D.N.Y. Jan. 16, 2008) (Karas, J.). As discussed, below BBC cannot meet this burden with respect to defendants Unibanco AIG and Usiminas.

A party is subject to jurisdiction only if: (1) the party is subject to service of process under the forum state's laws; (2) it has "minimum" contacts with the forum state as required by due process; and (3) the assertion of jurisdiction is reasonable. *Metropolitan Life Insurance Co. v. Robertson-Ceceo Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Stated similarly, "Resolution of a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction made in the Southern District of New York requires a two-step analysis… First, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant, such as under the New York long-arm statute. If such a basis for jurisdiction exists, the court must then determine whether the extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment." *Del Ponte v. Universal City Development Partners, Ltd.*, 2008 WL 169358 at *2.

"[T]he law of the forum state--here, New York--governs the issue of personal jurisdiction in admiralty cases." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50 (2d Cir.1991); *Complaint of Kreta Shipping, S.A.*, 1998 WL 173167 (S.D.N.Y. 1998). "Under New York law, personal jurisdiction may be established on the basis of either § 301 or § 302 of the New York Civil Practice of Law & Rules ('CPLR')." *Contract Marine Carriers, Inc. v. Abbott Laboratories, Int'l*, 1993 WL 106374, *3 (S.D.N.Y. 1993).

Under CPLR § 301, which preserves all pre-existing common law bases for establishing personal jurisdiction, a court has personal jurisdiction over a foreign corporation that is "doing business" in New York and is engaged in "such a continuous and systematic course of activity that it can be deemed to be present in the state." *Contract Marine Carriers, Inc. v. Abbott Laboratories, Int'l*, 1993 WL 106374, *3 (S.D.N.Y. 1993) (citing *Klinghoffer*, 937 F.2d at 50-51).

CPLR § 302 is New York's long-arm statute which extends the exercise of personal jurisdiction over "any non-domiciliary who, in person or through an agent, 'transacts any business within the state or contracts anywhere to supply goods or services in the state.' *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). "A non-resident 'transacts business' within the meaning of § 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.' *Cutco Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). "Essential to the maintenance of a suit under

9

§ 302(a)(1) 'is the existence of some articulable nexus between the business transacted and the cause of action sued upon....'" *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)).

A.    **UNIBANCO AIG IS NOT SUBJECT TO PERSONAL JURISDICTION IN UNITED STATES COURTS BY VIRTUE OF HAVING INSURED CARGO BOUND FOR UNITED STATES**

Unibanco AIG Seguros submits in conjunction with this memorandum the declaration of Ney Ferraz Dias and Lauriberto Tadeu Tavares dated May 5, 2008, setting forth Unibanco AIG's lack of contacts with this District, New York and the United States as well as the fact that Unibanco AIG has not directed any activity toward this District, New York or the United States. In view of Unibanco AIG's lack of contact with this district and given that it has directed no activities towards this district, it cannot be said that Unibanco AIG had "such a continuous and systematic course of activity that it can be deemed to be present in the state" and "doing business" within the meaning of CPLR 301.

In addition, under CPLR 302 it is established that a foreigner insuring cargo bound for the United States does not thereby subject itself to the jurisdiction of United States courts. *Complaint of Kreta Shipping, S.A.*, 1998 WL 173167, *8 (S.D.N.Y. 1998) ("no personal jurisdiction over marine insurer of goods shipped to New York which arrived damaged even where insurer had appointed a N.Y. claims agent", citing *Ringers' Dutchess, Inc. v. S.S. S.L. 180*, 494 F.2d 678 (2d Cir.1974); see also *Contract Marine*

*Carriers, Inc. v. Abbott Laboratories, Int'l*, 1993 WL 106374 (S.D.N.Y. 1993) ("under CPLR § 302 insurance of goods merely shipped into New York is insufficient to subject a foreign insurer to personal jurisdiction of courts in New York").

Given that Unibanco AIG has not sought to avail itself of any of the protections and benefits of this District, New York, or the United States, it is not subject to the jurisdiction of this court under CPLR 301 or 302 and is entitled to be dismissed from this action.

**B.    USIMINAS MECANICA S/A LACKS SUFFICIENT CONTACTS TO WARRANT THE EXERCISE OF PERSONAL JURISDICTION AS TO PLAINTIFF'S ALLEGATIONS IN THIS CASE**

As stated above, there is personal jurisdiction over a defendant under CLPR 301 only when it is "doing business" in New York and is engaged in "such a continuous and systematic course of activity that it can be deemed to be present in the state." *Contract Marine Carriers, Inc. v. Abbott Laboratories, Int'l*, 1993 WL 106374, *3 (S.D.N.Y. 1993). This of course is subject to the Constitutional Due Process of the Fifth Amendment that the exercise of personal jurisdiction over a foreign defendant be fair and reasonable...that the defendant's contacts with the forum state are such that it would reasonably expect to be haled before the courts of that state.

Turning to Usiminas, its contacts with New York and the United States are minimal. It has no offices or employees within the state or country. (See Declaration of Guilherme Muylaert Antunes, dated May 30, 2008, ¶2). In the past it only infrequently shipped cargoes to customers in the United States. (Antunes Decl. ¶¶3,5). The last sale it

made to the United States was in 2004 and no salesperson has visited the United States since 2004. (Antunes Decl. ¶4). As to New York, the only contact that Usminas had with the state is in connection with the single transaction with Perini covering the bridge parts damaged between Brazil and New York on the Malte B. (Antunes Decl. ¶3-4). This one-off transaction is not the type of systematic and continuous contact with a state that is deemed to give rise to general personal jurisdiction over a defendant and the court should find that there is no general personal jurisdiction over Usiminas.

As to specific personal jurisdiction under CPLR 302, Usiminas can only be subject to the jurisdiction of this court if it "transacts any business within the state" or "contracts anywhere to supply goods or services in the state," and there is an "articulable nexus between the business transacted and the cause of action sued upon." CPLR 302.

The only action Usiminas can be said to have conducted within the state is contracting with its customer Perini O&G, briefly visiting New York in connection with making that contract, and sending employees to New York on several occasions incidental to that contract. (Antunes Decl. ¶3-4,6). However, BBC's claims do not arise under the contract between Usiminas and Perini O&G. Instead, its claims arise under the Booking Note that was negotiated and settled in Brazil, the parties being listed as Usiminas and BBC, through its Brazilian agent BBC do Brasil Ltda., and/or the Bill of Lading that was issued in Brazil. (Dalen Decl. Exs. C-D). (BBC alleges its claims arise under the Bill of Lading. Regardless, it is manifest that both the Booking Note and Bill of Lading were concluded in Brazil and were not negotiated in this District, New York or

12

the United States). *See also*, Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty*, 2d ed. §3-19, p. 130 ("conflict of law principles would lead to the law of the jurisdiction where the bill was issued"). Thus, BBC's claims do not relate to Usiminas contract with Perini in New York and the exercise of personal jurisdiction over Usiminas is improper.

Nor can BBC claim that Usiminas is subject to personal jurisdiction under the second part of CPLR 302 by virtue of having contracted to "supply goods or services in the state." However, there is no authority which provides that a third-party other than a products liability tort victim can establish personal jurisdiction over a foreign entity which sells and ships goods to New York pursuant to CPLR 302. BBC's claims do not arise out of Usiminas contract to sell goods to a New York citizen but rather are related to its contract of affreightment with Usiminas. Nor is it reasonably fair for Usiminas to expect to be haled into a New York court by anyone other than Perini O&G.

On the other hand, BBC could reasonably expect to be brought before the courts in Brazil, since its contract of affreightment was with Usiminas, a Brazilian company. In addition, the contract of affreightment (set forth in the Booking Note) was negotiated and settled in Brazil and the Bill of Lading was issued in Brazil.

Based upon the foregoing, Usminas submits that it lacks the requisite contacts with New York to subject it to "general" personal jurisdiction under CPLR 301 and that the Plaintiff BBC's claims do not arise under or in connection with Usiminas' contract

with its New York customer Perini O&G making the exercise of "specific" personal jurisdiction under CPLR 302 likewise improper.

## POINT II

## THE RELATED DOCTRINES OF LIS ALIBI PENDENS, INTERNATIONAL COMITY, ABSTENTION AND RES JUDICATA WARRANT DISMISSAL OF THIS ACTION

Should the Court find that it has personal jurisdiction over any or all of the Defendants, Plaintiff's complaint should still be dismissed based upon the fact that the matters it presents to this Court are entirely duplicative and have already been litigated through trial to a judgment in Brazil which is currently on appeal. (Smera Decl. ¶¶3-6). BBC defended itself and received a favorable outcome: the judgment was R$ 54,337.41 (approximately US $32,000.00) whereas Unibanco AIG sought R$ 1,369,459.59 (approximately US $835,000). (Smera Decl. ¶¶4,6). However, since that judgment is on appeal BBC is now seeking this Court's cooperation in setting up a competing judgment in the event that its fortune is reversed on appeal in Brazil. It seeks to relitigate

"*Lis alibi pendens* is a doctrine rooted in international comity which permits a court to refuse to exercise jurisdiction in the face of parallel litigation that is ongoing in another country." *Seguros Del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164, 1169 (11th Cir. 2001). "The application of *lis alibi pendens* turns on whether a court should exercise its jurisdiction where parallel proceedings are ongoing in a foreign nation .... The threshold question, therefore, is whether [the present] case is parallel to the ongoing case in [the foreign court]." *Id.* at 1169-70 (internal citations omitted).

14

The Supreme Court has described international comity as "the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

The doctrine of international abstention in federal courts arises from the recognition that "in some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction." *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (7th Cir. 1994). While abstention is the exception rather than the rule, the district courts have not hesitated to dismiss or stay an action under the doctrine of international abstention in the face of a parallel foreign lawsuit when appropriate. The Second Circuit has provided the following non-exhaustive criteria to determine whether to abstain from the exercise of jurisdiction in the face of a foreign parallel lawsuit:

> similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction.

*Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006); see also, *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.*, 770 F.Supp. 880, 884 (S.D.N.Y. 1991); *Continental Time Corp. v. Swiss Credit Bank*, 543 F.Supp. 408, 410 (S.D.N.Y.1982).

Addressing the first factor, while the parties herein are not the same as the parties in the lawsuit in Brazil, closer scrutiny reveals that this factor does not favor this Court retaining jurisdiction. In the Brazilian action Unibanco AIG, as subrogated cargo underwriter, sued BBC. Here BBC has named Usiminas as an additional party as cargo owner. However, the suit in Brazil was a subrogation action with the insurance company asserting the rights of the insured. As to Perini, BBC asserts a dubious claim for "indemnity" for any amounts it must pay as a result of any legal proceedings in Brazil. However, Perini had no connection whatsoever to the Brazilian lawsuit and BBC fails to demonstrate any basis for its alleged indemnity claim against Perini. Perini purchased the cargo on DDP (delivered duty paid) terms and therefore Usiminas remained at risk for the loss at all times prior to clearance though U.S. Customs. Perini is only in this lawsuit in an attempt to legitimize BBC's invocation of this forum as well as to obtain discovery from Perini in its attempt to bring in the true targets of its complaint, Unibanco AIG and Usiminas.

As to the second factor of the timing the parallel suits: "[u]nder the principles of comity, priority is generally given to the suit first filed," and "[a]n action should be dismissed or stayed when a prior action has been filed in a foreign country among similar parties, particularly when the foreign action has progressed beyond an initial stage." *Caspian Investments*, 770 F.Supp. at 884-85 (citing *Ronar, Inc. v. Wallace*, 649 F.Supp. 310, 318 (S.D.N.Y.1986)).

Where there are parallel proceedings and the foreign court has already rendered a judgment, *res judicata* is implicated and abstention and dismissal is particularly appropriate. *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1521 (11th Cir. 1994) ("once a judgment on the merits is reached in one of the cases…failure to defer to the judgment would have serious implications for the concerns of international comity"). "Parallel proceedings in the same *in personam* claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as *res judicata* in the other." *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 36 (2d Cir.1987) (quoting *Laker Airways, Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 926-27 (D.C.Cir.1984)).

In this case, Unibanco AIG commenced a lawsuit in Brazil against BBC in on May 3, 2007. (Smera Decl. ¶3). After BBC appeared, defended, and a trial took place on February 12, 2008. (Smera Decl. ¶¶5-6). Only after judgment was reached by the court in Santos, Brazil did BBC bring this action. Deference to the Brazilian lawsuit is clearly warranted as the first filed action, especially where more than a year passed before BBC commenced this lawsuit and most especially where the Court in Brazil already rendered a judgment.

Brazil is also an "adequate alternative forum" as it has been previously found. See e.g., *Construtora Norbeto Oderbrecht S.A. v. General Elec. Co.*, 2007 WL 3025699, *10 (S.D.N.Y. 2007); *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 186637, *2 (S.D.Fla. 2008); *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F.Supp.2d

1318, 1322 (S.D.Fla. 2006).  Moreover, "[a]n alternative forum is presumed 'adequate' unless the plaintiff makes some showing to the contrary." *Da Rocha*, 451 F.Supp.2d at 1322 (citations omitted).  BBC is unlikely to make such a showing, particularly considering that it has reached a favorable position in that litigation.  While the Santos court found BBC liable, it limited its liability to US $32,000.00, whereas the damages claimed by Unibanco AIG exceed US $835,000. (Smera Decl. ¶¶4,6). It can hardly be said that BBC was not given an opportunity to fully and fairly defend the allegations. This also demonstrates that BBC did not suffer and will not suffer prejudice if this court defers to the Brazilian action; it was treated fairly and impartially by the Santos court.

As to the convenience of the parties, Brazil is the more convenient forum as it is where Unibanco AIG and Usiminas are located, Unibanco AIG has no contacts with the United States and Usiminas has only minimal contact with the United States.  Further, BBC is a foreign corporation and it is no less burdensome for it to litigate in Brazil as in New York.  Further, and action in New York would only add to the burden on the parties as the action in Brazil has proceeded to a judgment and is already on appeal.  In addition, Brazil has the greater connection to the lawsuit as it is where BBC contracted with Usiminas through its local agent and where the cargo was loaded and improperly stowed.

All of the factors mentioned by the Second Circuit favor dismissal of this action. Whether the Court conceptually prefers the doctrine of *res judicata*, abstention, international comity, or *lis alibi pendens*, under any or all of these concepts the result should be the same and the action should be dismissed.

**POINT III**

**FORUM NON CONVENIENS**

"[F]orum non conveniens and lis alibi pendens- are linked by the overarching principle that admiralty courts possessed of jurisdiction over a particular case 'will exercise it unless special circumstances exist to show that justice would be better served by declining it.'" Itel Container Int'l Corp. v. Atlanttrafik Express Service, Ltd., 686 F.Supp. 438, 440 (S.D.N.Y. 1988). "Dismissal on the grounds of forum non conveniens is appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice.'" Id. (quoting, Piper Aircraft Co. V. Reyno, 454 U.S. 235, 249 (1981)).

A forum non conveniens analysis requires that a court perform three steps: (1) determine the level of deference to afford the plaintiff's chosen forum, (2) determine whether an adequate alternative forum exists, and (3) balance public and private interest factors. Maersk, Inc. v. Neerwa, Inc., --- F.Supp.2d ---, 2008 WL 929481, *24 (S.D.N.Y. Mar. 27, 2008) (McMahon, J.).

1. Deference—"[T]he greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States the greater deference must be accorded the plaintiff's choice of a forum." Id. (citations

omitted). "Factors to be considered include: 'the convenience of the plaintiff's residence in relation to the chosen forum, the availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense.'" *Id.* (quoting, *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir.2001)). "[W]here the choice indicates forum-shopping, it is entitled to less deference." *Id.*

In this case BBC's chosen forum should be afforded no deference. It is a foreign plaintiff with no particular convenience in litigating in New York versus elsewhere. There are a few witnesses in New York where damage cargo was unloaded and surveyed. However, the persons that would have negotiated and settled the contract of affreightment are located in Brazil, and the witnesses to the cargo loading, lashing and stowage are in Brazil. In addition, this matter has already been litigated through trial to a judgment in Brazil by Brazilian cargo interests who are the true plaintiffs in this matter who have suffered a loss. That lawsuit was filed after a judgment in Santos and over one year from when that action was commenced. BBC's action in this district is a case of reverse forum shopping in which BBC is seeking an end-run around the decision in Brazil. Finally, in view of Point I above, there is no personal jurisdiction over the Defendants in this District. Even if the court finds that it does have jurisdiction over the Defendants, it could only be by the barest of threads that the court would so find. Given these circumstances, Defendants submit that BBC's choice of forum in New York should not be granted deference.

2. Adequate Alternative Forum— "An alternative forum is generally adequate if: (1) the defendants are subject to service of process there; and (2) the forum permits litigation of the subject matter of the dispute." *Id.* (quoting, *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir.2001)).

As repeated several times, this matter was fully litigated in Santos, Brazil wherein BBC appeared through counsel, defended itself, had the opportunity and presented defenses that mirror the allegations of its complaint before this Court, and received a favorable judgment. Also, as stated in Point II above, numerous courts have found that the courts of Brazil provide a neutral, adequate alternative forum and there is no reason to depart from such tradition in this case.

3. Public and Private Interest Factors— "The private interest factors include: (1) the relative ease of access to evidence; (2) the cost to transport witnesses to trial; (3) the availability of compulsory process for unwilling witnesses; and (4) other factors that make the trial more expeditious or less expensive." *Id.* at *26 (citing *Iragorri*, 274 F.3d at 73-74. "The public interest factors include: (1) settling local disputes in a local forum; (2) avoiding the difficulties of applying foreign law; and (3) avoiding the burden on jurors by having them decide cases that have no impact on their community." *Id.* at *26 (citing *Iragorri*, 274 F.3d at 74).

The private interest factors point to Brazil rather than New York as the preferred forum. There is more evidence located in Brazil since that is where the contract of carriage was settled, where the cargo was loaded, lashed and stowed. The costs associated with this lawsuit will be needlessly incurred as the very same issues presented herein have already been litigated in Brazil. Public interest factors also favor dismissal of this action. BBC is not a local plaintiff and does not do business in New York. Unibanco AIG and Usiminas do not have minimum contacts with New York and are also foreign entities. While there is no right to a jury and this case would be tried in admiralty, it would be a complete waste of this Court's resources to maintain this action which is entirely duplicative of the lawsuit in Santos, Brazil. Moreover, were this Court to accept BBC's invitations, it would be contrary to the principles of international comity to sit in review of the merits of the Santos Court's decision.

Based upon the foregoing, Defendants submit that this action should be dismissed on the grounds of *forum non conveniens* in favor of the earlier filed action in Santos, Brazil.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted and Plaintiff's

Complaint should be dismissed with prejudice.


Dated: New York, New York
       July 11, 2008

                    Respectfully submitted,
                    HILL RIVKINS & HAYDEN LLP
                    *Attorneys for Defendants Usiminas Mecanica S/A*
                    *and Unibanco AIG Seguros S/A*

By: _____
                    Keith B. Dalen (KD-4997)
                    Christopher M. Panagos (CP-2199)
                    45 Broadway, Suite 1500
                    New York, New York 10006
                    (212) 669-0600