UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                :
BBC CHARTERING &                :
LOGISTIC GmbH & CO. K.G.,       :
                                :
            Plaintiff,          :
                                : Docket No. 08 CIV 200 (WHP)
      -against-                 :
                                : Civil Action
USIMINAS MECANICA S/A,          :
PERINI O&G, PERINI CORP.,       :
O&G INDUSTRIES INC., and        :
UNIBANCO AIG SEGUROS S/A,       :
                                :
            Defendants.         :
                                :
- - - - - - - - - - - - - - - X

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**PERINI O&G, PERINI CORP. AND O&G INDUSTRIES INC.'S**
**MOTION FOR SUMMARY JUDGMENT**
_____


                      FLICKER, GARELICK & ASSOCIATES, LLP
                      Attorneys for Employer and Carrier
                      45 Broadway
                      New York, New York 10006
                      (212) 319-5240




Of Counsel:

Keith L. Flicker, Esq.

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 2

SUMMARY JUDGEMENT STANDARD . . . . . . . . . . . . . . . 4

ARGUMENT        . . . . . . . . . . . . . . . . . . . . . . 5

    I.   BBC IS NOT ENTITLED TO DECLARATORY RELIEF
         AGAINST PERINI BECAUSE ALL COSTS AND RISKS
         WERE ASSUMED BY UMSA IN THE SHIPMENT OF THE
         SUBJECT BRIDGE COMPONENTS UNDER THE AGREEMENT
         BETWEEN UMSA AND PERINI . . . . . . . . . . . . . 6

    II.  BBC IS NOT ENTITLED TO DECLARATORY RELIEF
         AGAINST PERINI BECAUSE THE PROVISIONS OF THE
         BILL OF LADING IS NOT ENFORCEABLE AGAINST
         PERINI UNDER COGSA, OR IN THE ALTERNATIVE,
         EVEN IF VALID AND ENFORCEABLE, DOES NOT SHIFT
         THE RISK OF LOSS TO PERINI . . . . . . . . . . 13

CONCLUSION        . . . . . . . . . . . . .    . . . . . . . 17

i

Defendants Perini O&G, Perini Corp. and O&G Industries Inc. (hereinafter, collectively "Perini"), respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). No triable issues of fact exist and Perini is therefore entitled to a judgment as a matter of law.

## PRELIMINARY STATEMENT

As fully set forth below, as a matter of law, BBC Chartering & Logistics GmbH & Co. K.G. (hereinafter "BBC") is not entitled to declaratory relief against Perini. Foremost, Usiminas Mecanica S/A (hereinafter "UMSA"), as the manufacturer and seller of the bridge components, bore all costs and risks with regard to the shipment of the cargo to New York. Alternatively, the provisions of the Bill of Lading, which BBC contends shifts the risk of damage to or loss of cargo onto Perini, is null and void under the United States Carriage of Goods by Sea Act, codified, 46 U.S.C. §§ 30701 et seq. (formerly codified at 46 U.S.C. §§ 1300 et seq.) ("COGSA"), as incorporated into the contract of carriage. In the further alternative, even if the provision in the Bill of Lading is enforceable under COGSA, BBC is not relieved of its responsibilities and liabilities under applicable provision of COGSA. Accordingly, there is no genuine issue as to any material fact and Perini is entitled to a judgment as a matter of law.

1

## SUMMARY OF FACTS

Perini and UMSA entered into an agreement, by which Perini agreed to purchase certain bridge components to be used by Perini in connection with its construction project for the Bronx Whitestone Bridge in New York. The terms of the agreement are reflected in the Commercial Invoice issued by UMSA to Perini, and specifically identifies that the bridge components are to be shipped from Vitoria, ES, Brazil to New York, New York, U.S., "Delivered Duty Paid - DDP." Attached hereto as Exhibit "A" is the Commercial Invoice issued by UMSA to Perini dated January 12, 2006 (hereinafter "Agreement").

UMSA and BBC DO Brasil, LTDA, as agents of BBC, entered into an contract of carriage, terms of which are reflected in the parties' Liner Booking Note and the Liner Bill of Lading. Attached hereto as Exhibit "B" is the Liner Booking Note between UMSA and BBC dated July 22, 2005; Attached hereto as Exhibit "C" is the Liner Bill of Lading No. BBCH1196067VN001 issued by BBC dated January 15, 2006 (hereinafter "Bill of Lading"). The Bill of Lading identifies the shipper as UMSA, the consignee as Perini O&G, the vessel as MALTE B, and the carrier as BBC. Further, Victoria is specified as the port of loading and New York as the port of discharge.

2

On January 15, 2006, the MALTE B departed Victoria, Brazil, bound for New York, New York, carrying the bridge component subject of the agreement between Perini and UMSA. The cargo was insured by Unibanco AIG Seguros S/A (hereinafter "Unibanco"), and was received onboard the MALTE B in good order and condition. While in transit to New York, on or about January 31, 2006, the subject cargo was either damaged or lost overboard the MALTE B. On or about February 7, 2006, the MALTE B arrived at the marine terminal in New York, failing to deliver the cargo in like good order and condition as was as received on board the MALTE B in Victoria, ES, Brazil.

On March 2, 2006, Unibanco initiated an in rem action against MALTE B in the Tampa Division, Middle District of Florida, United States District Court, thereby arresting the MALTE B pursuant to Rule C of the Fed. R. Of Civ. P. On March 9, 2006, Skuld Assuranceforeningen issued a letter of undertaking on behalf of the MALTE B and BBC to UMSA and its underwriter, Unibanco. The Florida in rem action was subsequently dismissed, and Unibanco filed suit in Brazil against BBC to recover the liabilities incurred for the loss of underwritten shipment. The Brazil suit resulted in a monetary judgment against BBC, which is now under appeal. On January 10, 2008, BBC filed the present suit in the

3

Southern District of New York for declaratory relief against Unibanco, UMSA and Perini.

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Clarke v. Aetna Life Ins. Co., 471 F. Supp. 2d 463, 468 (S.D.N.Y. 2007). It is appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Indeed, summary judgment is 'mandated' when the 'evidence is insufficient to support the non-moving party's case.'" Clarke, 471 F. Supp. 2d at 469 (quoting Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61 (2d Cir. 1998)).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323-25 (1986); See also Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 256 (1986).  If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The nonmoving party cannot rely on mere allegations, denials, conjectures or conclusory statements, but must also present affirmative and specific evidence showing that there is a genuine issue for trial. Gross v. NBC, 232 F. Supp. 2d 58, 67 (S.D.N.Y 2002);  see also W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  Rather, the nonmoving party can create a genuine issue of material fact only by citing competent, admissible evidence. Galasso v. Elsman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

## ARGUMENT

BBC's claim for against Perini relies solely on the provisions of the Bill of Lading (hereinafter "B/L provision" or "provision"), which BBC contends shifts the risk of loss as to the cargo to USMA and Perini, collectively.  In pertinent part, the B/L provision provides:

> Carried on deck at Shipper's/Charterer's/ Receiver's risk as to perils inherent in such carriage, any warranty of seaworthiness of the vessel expresly [sic] waived by the

5

> Shipper/Charterer/Receiver, and in all other
> respects subject to the provisions of the
> United States Carriage of Goods By Sea Act,
> 1936.

Exhibit C.  BBC further contends that, by virtue of the B/L provision and allocation of loss, Perini owes BBC defense and indemnity for the suit filed by Unibanco in Brazil.  For the below reasons, the B/L provision does not shift the risk of loss to Perini, and accordingly, BBC is not entitled to declaratory relief against Perini.

## I.

## BBC IS NOT ENTITLED TO DECLARATORY RELIEF AGAINST PERINI BECAUSE ALL COSTS AND RISKS WERE ASSUMED BY UMSA IN THE SHIPMENT OF THE SUBJECT BRIDGE COMPONENTS UNDER THE AGREEMENT BETWEEN UMSA AND PERINI

In particular, it is BBC's contention that the B/L provision shifts the risk of loss to Perini and UMSA, collectively, and that Perini thereby must indemnify BBC for any liabilities incurred by it for the loss of cargo.  However, the allocation of loss between UMSA and Perini is governed solely by the agreement between UMSA and Perini, specifically, by its terms of delivery. As set forth above, UMSA and Perini entered into an agreement for the purchase of bridge components to be delivered from Vitoria-ES-Brasil to New York, New York, USA.  The agreement identifies Perini/O&G, A Joint Venture, as the buyer and consignee of the

6

contracted goods, and UMSA as the manufacturer and exporter. Most significantly, the agreement specifically incorporates and identifies the terms of the sale and delivery to be "Delivered Duty Paid – DDP." Exhibit A.

In that regard, the agreement incorporated the International Chamber of Commerce's ("ICC") International Commerce Terms ("INCOTERMS"), a set of standardized terms for international commercial contracts, which defines a "DDP-Delivered Duty Paid" contract as one in which the seller assumes all costs and risks for loss or damage during the transport of the goods until delivered to the buyer at the named place of destination. <u>Skandia Ins. Co. v. Star Shipping AS</u>, 173 F. Supp. 2d 1228, 1234 (S.D. Ala. 2001) ("The terms of the sale were 'DDP', which is an INCOTERM for 'Delivered Duty Paid,' and means that title to the [goods] and risk for its loss or damage transferred when the goods are put at the disposal of the buyer at the named place (seller bears all risks of the goods during the whole transport) ...").

INCOTERMS was first devised and published by the ICC in 1936, and have been periodically updated and revised to reflect changes in international transport and to insure compatibility with modern trends and developments in international commerce to provide a set of international rules for the interpretation of the commonly

7

used terms in international trade.  <u>See</u> <u>e.g.</u> <u>St. Paul Guardian Ins.</u>
<u>Co. v. Neuroses Med. Sys. & Support</u>, 2002 U.S. Dist. LEXIS 5096
(S.D.N.Y. 2002); <u>See</u> <u>also</u> <u>S.K.I. Beer Corp. v. Baltika Brewery</u>, 443
F. Supp. 2d 313 (E.D.N.Y. 2006).  As its most recent revision, and
applicable to the subject contract, 2000 INCOTERM consolidates and
defines thirteen terms to provide international businesses with
uniform trade terms.  In particular, each of the thirteen terms are
referred to by a three-letter abbreviation and is categorized into
four groups that reflect the allocation of various obligations.  In
EXW, the seller makes the goods available to the buyer at his
premises.  In the F terms (FCA, FAS, and FOB) the seller is obliged
to deliver the goods to a carrier designated by the buyer.  The C
terms (CFR, CIF, CPT, and CIP), the settler is obliged to contract
for carriage, however, he does not have to assume the risk of loss
of or damage to the goods or the supplemental cost associated due
to events after the dispatch of shipment.  Finally, the D terms
(DES, DEQ, and DDP), the seller is obligated to bear all costs and
risks needed to deliver the goods to the buyer at his county of
destination.  In pertinent part, the 2000 INCOTERMS provides in its
preamble to its term "DDP Delivered Duty Paid" (... named place of
destination):

> "Delivered Duty Paid" means that the seller
> delivers the goods to the buyer, cleared for
> import, and not unloaded from any arriving
> means of transport at the named place of
> destination.  The seller has to bear all the
> costs and risks involved in bringing the goods

> thereto including, where applicable, any
> "duty" (which term includes the responsibility
> for and the risks of the carrying out of
> customs formalities and the payment of
> formalities, customs duties, taxes and other
> charges) for import in the county of
> destination. Whilst the EXW terms represents
> the minimum obligation for the seller, DDP
> represents the maximum obligation. ... If the
> parties wish the buyer to bear all risks and
> costs of the import, the DDU term should be
> used.

ICC Publication 560, 2000 INCOTERMS, International Chamber of Commerce (emphases added).

It is consistently recognized across jurisdictions that "'INCOTERMS' are standardized commercial shipping terms used by merchants to specify when risks and liabilities shift from seller to buyer." S.K.I. Beer Corp., 443 F. Supp. 2d at 315 n.4 (citing Texful Textile Ltd. v. Cotton Exp. Textile, Inc., 891 F. Supp. 1381 n. 6 (C.D. Cal. 1995)); Nuovo Pignone v. Storman Asia M/V, 310 F.3d 374 (5th Cir. 2002) (noting that INCOTERMS are the most widely recognized non-statutory definition of trade). In Phillips Puerto Rico Core, Inc. v. Tradax Petroleum Ltd., the Court of Appeals for the Second Circuit recognized the incorporation of INCOTERMS to international trade contracts, specifically applying the definition of "C&F" under the 1980 INCOTERM. 782 F.2d 314, 316 (2d Cir. 1985). Similarly, in Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd., the Southern District of New York applied

9

the definition of the term "FCA" under the 1990 INCOTERMS.  479 F. Supp. 2d 388 (S.D.N.Y. 2005); <u>Vitol S.A., Inc. v. Koch Petroleum Group, LP</u>, 2005 U.S. Dist. LEXIS 18688 (S.D.N.Y. 2005) (applying the term "FOB" under 2000 INCOTERMS); <u>Paul Blum Co. v. Daewoo Int'l (am.) Corp.</u>, 2001 U.S. Dist. LEXIS 19796 (S.D.N.Y. 2001) (applying 1990 INCOTERMS "CFR"); <u>Calzaturificio Claudia s.n.c. v. Olivieri Footwear</u>, 1998 U.S. Dist. LEXIS 4586 (S.D.N.Y. 1998) (applying the definition of "EX Works" under 1990 INCOTERMS).

In addition, the term "Delivered Duty Paid" as a trade term has been recognized prior to and without reference to the ICC's INCOTERMS, as allocating the risk of loss to the shipper during the transit.  <u>See</u> <u>Gourd v. Healy</u>, 206 N.Y. 423 (1912). Further, the Uniform Commercial Code, as revised in 2004, eliminated previous shipment and delivery terms, "because they are inconsistent with modern commercial practices."  U.C.C. § 2-319 (Legislative Note).  The official comment to § 2-319 further clarifies that "Section 2-319 through 2-324 have been repealed. The effect of a party's use of shipping terms such as "FOB," "CIF," or the like, absent any express agreement to the meaning of the terms, must be interpreted in light of any applicable usage of trade and any course of performance or course of dealing between the parties."  Id. (Official Comment).

In accord with the terms of the agreement and delivery between UMSA and Perini, UMSA had assumed all costs and risks associated with the shipment of the contracted bridge components. In this regard, UMSA insured the goods in transport under a policy issued by its insurer, Unibanco AIG Seguros S/A. It is undisputed by the parties that the loss of the shipment occurred during transit from Victoria-ES-Brazil to New York, New York, U.S. Plaintiff's Compl. at ¶ 14. Following the damage to and loss of the subject cargo, Unibanco became liable to UMSA for the covered cargo under the said policy, and UMSA thereby recovered from Unibanco the insurance proceeds for the damage and loss. Unibanco subsequently filed suit against BBC in Brazil to recover the incurred liability on the insured shipment. Id. at ¶ 17-19.

Further, Unibanco and UMSA do not contend that Perini bore, in whole or in part, the risk of loss for the cargo during transit, and do not challenge the terms of the agreement as to the allocation of risk to UMSA during transit. Rather, it is BBC's misplaced contention that the terms of the Bill of Lading somehow shifts, in whole or in part, the risk of damage to or loss of the shipment to Perini. However, even if BBC's contention is correct in that the terms of the Bill of Lading shifts the risk of loss from BBC to UMSA and Perini, collectively, it does not delineate the allocation of risk as between UMSA and Perini, individually.

11

The allocation of risk between UMSA and Perini for the shipment is governed solely by the terms of delivery reflected in the agreement between UMSA and Perini. See e.g. Phillips Puerto Rico Core, Inc., 782 F.2d 314.

In summary, there is no factual or legal basis to support BBC's claim for declaratory relief against Perini. The terms of the agreement between UMSA and Perini were "Delivered Duty Paid - DDP," which is defined by 2000 INCOTERM as a contract in which the seller assumes all risks of damage to and loss of cargo until delivery to the buyer at the named place of destination. Contrary to BBC's contention, the Bill of Lading does not allocate the risk of loss as between UMSA and Perini with respect to the contracted goods. As the shipper is responsible for all costs and risks associated with shipment in a DDP contract, the contract of carriage was procured by UMSA. The parties agree that shipment was lost in transit from Victoria-ES-Brazil, its point of shipment, to New York, New York, U.S., its port of destination. Further, UMSA and Unibanco do not contend that Perini, as buyer and consignee in the transaction, bore the risk of loss with regard to the shipment while in transit to New York. The risk of loss was neither assumed by nor transferred to Perini during the carriage, and accordingly, BBC is not entitled to indemnification from Perini for the liabilities incurred for the damage to or loss of the cargo.

12

II.

**BBC IS NOT ENTITLED TO DECLARATORY RELIEF AGAINST
PERINI BECAUSE THE PROVISIONS OF THE BILL OF LADING
IS NOT ENFORCEABLE AGAINST PERINI UNDER COGSA, OR IN THE
ALTERNATIVE, EVEN IF VALID AND ENFORCEABLE, DOES
NOT SHIFT THE RISK OF LOSS TO PERINI**

BBC contends that, by virtue of the B/L provision, while COGSA applies to the subject contract of carriage, it is only selectively incorporated and UMSA and Perini assumed the "risk as to perils inherent in such carriage" and "expressly waived "any warranty of seaworthiness of the vessel."  Consistent with BBC's contention, although COGSA does not apply ex proprio vigore, the contract of carriage in this case is subject to the provisions of COGSA by incorporation.  Sompo Japan Ins. Co. of Am. v. Union Pacific R.R., 456 F.3d 54, 69 (2d Cir. 2006) (citing Pannell v. U.S. Lines Co., 263 F.2d 497, 498 (2d Cir. 1959), cert. denied, 359 U.S. 1013 (1959)); See also Great Am. Ins. Co. v. M/V Handy Laker, 2002 U.S. Dist. LEXIS 26378 (S.D.N.Y. 2002).  In cases where COGSA does not apply by its own terms, COGSA applies to contract of carriage where the parties intentionally incorporate it into the bill of lading.  Parnell, 263 F.2d at 498.

However, § 1303(8) of COGSA "forbids any clause or covenant, or agreement in a contract of carriage lessening the carrier's liability for negligence, fault, or dereliction of

13

statutory duties otherwise than as provided in the act." <u>Indussa</u> <u>Corporation v. S.S. Ranborg</u>, 377 F.2d 200 (2d Cir. 1967).  Section 1303(8) provides in pertinent part:

> Any clause, covenant, or agreement in a
> contract of carriage relieving the carrier or
> the ship from liability for loss or damage to
> or in connection with the goods, arising from
> negligence, fault, or failure in the duties
> and obligations provided in this section, or
> lessening such liability otherwise than as
> provided in this chapter, shall be null and
> void and of no effect ...

46 U.S.C. § 1303(8) (1936).  Therefore, to the extent that the B/L provision purports to lessen the responsibilities and liabilities imposed by COGSA, the provision is "null and void and of no effect."

    In the alternative, however, even if the B/L provision is valid under COGSA, the provision, by its own terms, relates only to the "warranty of seaworthiness of the vessel" and the "risk to perils inherent in such carriage."  As specifically stated therein, the shipment is "in all other respects subject to the provisions of the United States Carriage of Goods by Sea Act 1936."  In that regard, even if, by virtue of the foregoing provision, UMSA and Perini collectively assumed the risk inherent in such carriage, and expressly waived all warranty of seaworthiness of the vessel, all other provisions of COGSA not inconsistent with the terms of the Bill of Lading applies to the contract of carriage. <u>Parnell</u>, 263

14

F.2d at 498.

Particularly, nothing in the Bill of Lading comports to relieves BBC of its responsibilities and liabilities of the carrier and ship outlined in § 1303(2) of COGSA, which specifically states that "[t]he carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." 46 U.S.C. § 1303(2). COGSA "does not permit the carrier to divest itself of the duty to insure the proper stowage of the cargo. However, if the parties agree to hold the vessel owner free of liability for improper stowage, their private agreement controls, not COGSA." GTS Industries S.A. v. S/S Havtjeld, 887 F. Supp. 531, 537 (S.D.N.Y. 1994). In this case, however, the B/L provision does not include an agreement by UMSA and Perini to hold BBC free of liability for improper stowage. As Unibanco's suit in Brazil is based on, inter alia, the theory of improper stowage by BBC, it is not affected by the B/L provision. Even if the B/L provision selectively incorporates the provisions of COGSA, while specifically excluding the duty of seaworthiness found in § 1303(1), it does not relieve BBC from the duties imposed by the remaining applicable sections of COGSA, namely, § 1303(2).

Additionally, even if, by virtue of the B/L provision, UMSA and Perini assumed the "risk to perils inherent in such

15

carriage," it would similarly not relieve BBC from all of the responsibilities and liabilities imposed by COGSA. Rather, § 1304(2) of COGSA already provides the carriers exemptions from liability for "uncontrollable causes of loss," including, inter alia, "[p]erils, dangers, and accidents of the sea or other navigable waters," under §1304(2)(c) and "[a]ct of God" under § 1304(2)(d). In its Complaint, BBC specifically alleges that the loss of and damage to the cargo was due to "winds from the southwest [which] increased to Buford 11, with high seas (force 9) and 40 foot swells." Plaintiff's Compl. at ¶ 14. BBC further alleges that "[p]ursuant to COGSA, certain exceptions to liability apply to this carriage and BBC is, therefore, completely shielded from any liability." Id. at ¶ 20. In that regard, the Bill of Lading does not provide exemptions not already provided for by COGSA, with the exception of seaworthiness provided for in § 1303(1). In any event, whether the B/L provision expands the protections already afforded to BBC by § 1304(2), it does not relieve BBC from all the responsibilities and liabilities imposed by the provisions of COGSA, namely, § 1303(2).

Without regard its validity or enforceability, the B/L provision, by its own terms, do not relieve BBC of its responsibilities and liabilities under § 1303(2), let alone impose a duty on Perini to defend and indemnify BBC for the suit filed in

16

Brazil. Therefore, even if COGSA is selectively incorporated into subject contract of carriage, while excluding any warranty of seaworthiness in § 1303(1) and expands the exemptions already provided for in § 1304(2), the remaining provisions of COGSA are applicable to the contract of carriage. BBC thereby remains liable for the damage to or loss of cargo caused by its act or omission in violations of its responsibilities and liabilities imposed by of COGSA, as incorporated.

## CONCLUSION

For the foregoing reasons, Perini respectfully request that this Court enter an Order granting summary judgment in favor of Perini.

Dated:  New York, New York
        July 11, 2008

> FLICKER, GARELICK & ASSOCIATES, LLP
> Attorneys for Perini O&G, Perini
> Corp., and O&G Industries Inc.
>
> By: _____
>     Keith L. Flicker
>     45 Broadway
>     New York, New York 10006
>     (212) 319-5240

17